61 So.2d 817

## TUMLIN et al. v. TROY BANK & TRUST CO. et al.

### 4 Div. 538.

Supreme Court of Alabama.

June 30, 1950.

As Modified on Denial of Rehearing

Dec. 18, 1952.

240.

Oliver W. Brantley, Troy, Files Crenshaw and B. P. Crum, Montgomery, Alto V. Lee, III, Dothan, and· Chas. A. Ball, Steiner, Crum & Weil and Ball & Ball, Mont-

gomery, and John W. Lapsley, Selma, for appellants.

Marion Rushton, Montgomery, and J. H. Wilkerson, Troy, for appellee Bank, and A. A. Carmichael, Atty. Gen., pro se.

Henry Upson Sims and William H. Brantley, Jr., Birmingham, amicus curiae.

FOSTER, Justice.

This is the second appeal in this case (see, Henderson v. Troy Bank & Trust Co., 250 Ala. 456, 34 So.2d 835). The same legal questions are presented and argued. The changes made in the allegations of the bill do not alter the result or control in the consideration of the legal questions.

The provisions of the will and the contentions of complainants are set out on former appeal, to which reference is here made, and they will not be repeated here in detail.

We see no occasion for appellants' counsel to express the desire that we "face the issue squarely" since we have manifested no disposition not to do so. We simply and plainly did not agree with the contentions then made and now repeated.

The brief asserts that the "heart of this case" hinges around that feature of the will which provides (Item V) "At the expiration of twenty years after my death and after all bequests herein shall have been paid as herein directed, my said trustee shall cause to be formed an association to be known and styled as 'The Charles Henderson Educational Association.' This association shall have no capital stock, have its principal place of business in Troy, Pike County, Alabama, and its purpose shall be to encourage and foster education by the erection and equipment of school buildings as hereinafter set forth." It further provides that the directors or managers of said association shall be three bona fide citizens of Pike County, Alabama, elected annually by the directors of the Troy Bank and Trust Company (which is the trustee). This association shall receive from the trustee the income of the trust estate. The corpus shall be held and managed by the trustee. This income shall be used by the

242 .

association for the construction and equipment of school buildings within the county of Pike, Alabama. Specific direction is given as to the location of the buildings and their material and the conditions existing to justify any specific location.

Item VI is in substance that at the expiration of twenty years from the date of the organization of said Charles Henderson Educational Association, it shall cease to erect school buildings, and another organization shall be formed called the "Charles Henderson Memorial Association," which shall· be self-perpetuating and continue indefinitely and its purpose shall be the construction and maintenance of a hospital for the treatment of crippled children. The organization shall be composed of a governing board of six people to be appointed by the trustee. The expiration of their respective terms shall be one, two, three, four, five and six years, and the remaining members shall select the successors. The trustee is directed to continue to manage the corpus and· only the income shall be turned over to the association for the construction and maintenance of the hospital, and be expended by the governing board for crippled children according to minute directions.

█ Quoting from appellants' brief, they "contend that those directions to pay to 'The Charles Henderson Memorial Association' a non-existent association to be formed at a remote time—violate the rule for the same reasons applicable to the previous directions concerning the Educational Association; that the principle of 'gift over from one charity to another' is not applicable first because of the invalidity of the first gift; secondly, because of the non-charitable character of the first gift, and, thirdly, because of the indefinite lapse of time after the expiration of the life of the Educational Trust and before the possible taking effect of Item Six through the formation of the Memorial Association."

The argument first advanced by appellants, which we will certainly "face squarely" as we did on former appeal, is based upon their contention that the question involved is controlled by the principle of cy pres. The argument made now, as before, is that the trust is violative of the rule against perpetuities unless it can be aided by that principle. And that principle stood repudiated in Alabama, though later adopted in the Code of 1940, Title 47, section 145.

The argument is that the Charles Henderson Educational Association is not to be organized until twenty years after the death of Charles Henderson and there is no compulsory process to force its organization provided for either in the will or by law. The argument quotes from Carter v. Balfour's Adm'r, 19 Ala. 814, as follows:

"I do not recognize the doctrine of 'cy pres,' which in substance is, if you cannot find the society specified in the will, or apply the fund to the charity intended by the testator, the court will then apply it to some other charity as nearly analogous to it as possible. The bequests should be paid only to the societies specified in the will, or their authorized agents. If the societies, or either of them did not exist at the time of the testator's death or cannot now be found, organized or known as above stated, then the bequest, to such society or societies should be considered and disposed of as lapsed legacies."

That statement of the principle has been adhered to, but the doctrine of equitable approximation or· deviation now also aided by statute (Code of 1923, section 10438, Code of 1940, Title 58, section 57) has always obtained here and distinguished from. cy pres. In many cases the courts draw a distinction between prerogative cy pres and judicial cy pres. Erskine v. Whitehead, 84 Ind. 357; 10 Am.Jur. 676. In our cases what other courts call judicial cy pres, we call equitable approximation. Lovelace v. Marion Institute, 215 Ala. 271, 110 So. 381; Williams v. Pearson, 38 Ala. 299.

█ In short, this means that when the execution of the trust cannot be administered exactly in accordance with the terms of the trust instrument (the beneficiary being ascertainable), a court of equity may vary such details of administration to secure the object for which the trust was created. Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726; Id., 249 Ala. 597, 32 So.2d

526; Heustess v. Huntingdon College, 242 Ala. 272, 5 So.2d 777; Lovelace v. Marion Institute, supra; King v. Banks, 220 Ala. 274, 124 So. 871; Noble v. First National Bank, 236 Ala. 499, 183 So. 393; Dunn v. Ellisor, 225 Ala. 15, 141 Ala. 700.

Many authorities do not distinguish between cy pres and approximation in the use of terms. 14 Corpus Juris Secundum, Charities, §§ 51, 52, page 512, notes 46, 47, 50 and 51, page 514, note 63. In those cases which declare that cy pres is necessary to sustain the trust, it will be noted on proper analysis that the court is applying what we call approximation (which is judicial cy pres), and in some use the words indiscriminately. Erskine v. Whitehead, supra; City of Philadelphia v. Girard's Heirs, 45 Pa. 9, 25, 9 Wright, Pa., 9, 25, 84 Am.Dec. 470; Codman v. Brigham, 187 Mass. 309, 72 N.E. 1008, 105 Am.St.Rep. 394; Quinn v. Peoples Trust & Savings Co., 60 N.E. 281, 157 A.L.R. 885; Reasoner v. Herman, 191 Ind. 642, 134 N.E. 276; 2 Perry on Trust, section 728, see page 1242, note 54.

■ It is only the prerogative cy pres which our Court had repudiated. Universalist Convention of Alabama v. May, 147 Ala. 455, 41 So. 515; Carter v. Balfour's Adm'r, 19 Ala. 815; Williams v. Pearson, 38 Ala. 299. We are not now called upon to give effect to section 145, Title 47, Code.

When this situation is understood, it is not difficult at all to maintain the position which the Court in agreement with Justice Stakely stated on the former appeal that the principle of cy pres has no application, meaning of course thereby that principle which this Court has repudiated and called cy pres and which was not an exercise of the judicial power. But this Court has consistently held to the principle that a court of equity in administering a charitable trust has a right to vary the details of such administration so that the trust may be used for the beneficiaries which are named or designated by description. It is wholly immaterial whether that power is called cy pres, as it is in some states, or approximation as it is in Alabama.

Now with respect to the Charles Henderson Educational Association, we note that it is not to be incorporated but to be composed of three men who will be the directors and managers. It will own or hold no property of the trust. It will only receive the income which the trustee shall turn over to it to invest in the construction and equipment of school buildings in Pike County, whose title shall be in the State of Alabama. In no sense is this association of three persons a beneficiary of the trust. The charity intended by the testator is not this association. Such association is but an administrative agency of the trust,—a detail in the process of securing the object for which the trust was created,—building and equipping school houses. It comes squarely within the principle of equitable approximation when a court of equity will appoint the members to constitute such association if it is not done exactly according to the terms of the trust will. The association is but an aid in the administration of the trust, not a beneficiary of it. Codman v. Brigham, supra. The beneficiaries are the public in Pike County to be benefited by the State school buildings.

■ It is evidently intended to be a part of the public school system of the State and County by constructing and equipping suitable school buildings in said county where needed. We do not doubt that it is a charitable trust to benefit all members of the public in said county who are usually benefited by public schools. It is an ascertainable object designed and expressed by the donor. It is no objection to such a trust that the trustee (or some administrative agency) is presently incapable of taking on the duties. Since the object is clear and clearly described, the want of a trustee or his assistant will be supplied by a court of equity. Williams v. Pearson, 38 Ala. 299; Brigham v. Peter Bent Brigham Hospital, 1 Cir., 134 F. 513.

■ The trustee is the fiscal manager of the corpus of the trust fund to hold the legal title to it and earn income from it. That is not the purpose for which the trust is set up. After certain beneficiaries

are provided for out of the income, it is for charitable purposes. When so, it is not affected by the fact that the selection of the particular beneficiaries is left to the trustee or to an agency not interested in the trust. Tarver v. Weaver, 221 Ala. 663, 130 So. 209; Johns v. Birmingham Trust & Savings Co., 205 Ala. 535, 88 So. 835. Such is also the nature of the Woodward will. See, Thurlow v. Berry, supra.

We think the theory of appellants' counsel on the cy pres principle is erroneous in assuming that Alabama has never adopted the equivalent of judicial cy pres under the name of approximation, and that the educational association is the beneficiary of the trust. But neither is the fact.

The same principle applies to the Memorial Association charged with the duty to erect and maintain in Pike County a hospital for crippled children. The crippled children are the beneficiaries as stated in Williams v. Pearson, supra, and Tarver v. Weaver, supra. The Memorial Association, as the Educational Association, is but an instrumentality to see that the crippled children receive the benefits intended to be provided for them. Thomas v. Bryant, 185 Va. 845, 40 S.E.2d 487, 169 A.L.R. 257; Codman v. Brigham, 187 Mass. 309, 72 N.E. 1008, 1009, 105 Am.St.Rep. 394; Brigham v. Peter Bent Brigham Hospital, supra.

The will does not pass anything directly to the educational association or the hospital; and, as pointed out in Codman v. Brigham, supra, they are mere details of administration. This status is different from one in which the will passes property to trustees of a named institution supposed to be then in existence, but which is not in existence or its existence has permanently terminated. For a court then to name some other charitable institution as the beneficiary is prerogative cy pres not in existence in Alabama except by recent statute. King v. Banks, 220 Ala. 274, 124 So. 871.

▮ But when the will provides for the creation of an association or other authority to which the trustee shall pass funds to be used by that authority to distribute

for the specified charitable use, such authority is a detail of administration and the court has the power to provide for its creation and when proper to deviate from the prescribed method. That is judicial cy pres or equitable approximation available in Alabama.

▮ It is also a fallacy to say that this gift to charity is based on an uncertain contingency. For the benefit of schools, it is based on the certainty that twenty years will expire after the death of testator. There is no contingency or uncertainty about that. The charity is not conditional upon the formation of the Educational Association to execute it. The devotion of the entire income to charity, the construction and equipment of school buildings, is a fixed and vested dedication of all the income to that purpose. The particular agency which shall administer it may be uncertain. Certain qualifications are set up to justify the use of the fund at any given place. This is like certain qualifications that may be set up to entitle persons to have the benefit of certain charities, as crippled children, or standards for school benefits, as set up in the Woodward will (Thurlow v. Berry, supra). But the fund is completely and unconditionally and irrevocably vested for those benefits in such persons as are designated to hold the title. There of course must be in existence such person to hold the title at the death of the testator, or the court will appoint one. The gift here is not to a charity which is not in existence and whose coming into existence is uncertain or contingent upon an uncertain event. The charity is not the association.

Here, the gift is not on any condition whatever. It is irrevocably dedicated to the building and equipment of school houses. There are certain standards set up to justify its application to a certain situation. But a failure to comply is not a condition to the charity. If one locality does not comply another may. It is only when there is a complete inability to use the fund for the purpose set up that it will lapse. If the trust is set up on a condition that certain things shall happen, it is contingent. That is not this trust.

It is trite to say that the trust funds may vest immediately although the time of their enjoyment is postponed. If the title vests immediately on the death of the testator and standards are set up for the qualifications of those members of the public who are to enjoy the benefits, and under those standards persons probably exist and are fully qualified, the charity vests at once for their benefit and it is not contingent. This theory is upon established principles. Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726.

While "it is essential to the constitution of a valid trust that its objects be so designated or described that they may be definitely known or ascertained from the provisions of the instrument purporting to create it. But uncertainty as to the individual whom the benefit may reach will not defeat a gift to charity—that character of uncertainty is one thing that distinguishes a public from a private trust. * * * To constitute a charitable use, it must confer a public benefit, open to an indefinite number of persons. Festorazzi v. St. Joseph's Catholic Church, 104 Ala. 327, 18 So. 394, 25 L.R.A. 360, 53 Am.St.Rep. 48. But the general doctrine is that the beneficiaries of a public charity must be designated as a class, ascertainable with reasonable certainty, from which the trustee may be authorized to select the immediate persons or objects to receive the special benefits. * * * And it has been repeatedly held that a charitable trust will not fail on account of any uncertainty as to the ultimate beneficiaries, within a properly designated class, if there is a competent trustee to make a selection and thereby render certain the beneficiaries who are to enjoy the bounty provided by the trust." Johns v. Birmingham Trust & Savings Co., 205 Ala. 535, 88 So. 835, 836.

The duty to make the selection and determine if the qualifications have been met and to see that the requirements are complied with is committed to the association which shall perform some of the functions of the trust, and is to that extent a trustee or administrative agent and is not to any extent a beneficiary. This is likewise illustrated in Tarver v. Weaver, 221 Ala. 663, 130 So. 209.

There is a clear distinction between those parts of the instrument which (1) declare the gift and its purpose, and (2) those which direct the mode of its administration. Vidal v. Girard's Ex'rs, 2 How. 127, 11 L.Ed. 205; Morris v. Edwards, 227 N. Y. 141, 124 N.E. 724; Codman v. Brigham, 187 Mass. 309, 72 N.E. 1008; Brigham v. Peter Bent Brigham Hospital, 1 Cir., 134 F. 513.

### Accumulations.

Section 146, Title 47, Code, provides under a title of "Accumulation merely" that "no trust of estate for the purpose of accumulation only can have any force or effect for a longer term than ten years" (except for the benefit of minors). On former appeal we gave a complete history of this statute and its setting.

Of course significance must be accorded the words "only" and "merely" meaning in substance the same idea. Under that statute a trust accumulating income for a longer period than ten years is permissible if it is either partly or wholly for some other purpose than mere accumulation.

We have given consideration to this statute in some of our cases as pointed out on former appeal. Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Ramage v. First Farmers & Merchants Nat. Bank, 249 Ala. 240, 30 So.2d 706; Goodwyn v. Cassels, 207 Ala. 482, 93 So. 405; Watters v. First National Bank, 233 Ala. 227, 171 So. 280; Thurlow v. Berry, supra. We have said that accumulation means the addition of the interest or income from a fund to the principal or corpus so as to prevent expenditures of such interest or income. Ramage v. First Farmers & Merchants Nat. Bank, supra; Henderson v. Henderson, supra; 41 Am.Jur. page 92.

In their brief appellants' counsel say "we attack that requirement of the will which commands that this excess be made a permanent addition to the permanent corpus. This requirement has no other purpose than accumulation."

246

■ Our cases and the history of this statute support what we held on former appeal, and consider the proper construction of the statute, that the trust shall not be set up with the intention to impound all the income to accumulate for no other purpose than as an accumulation to be added to the principal for a period longer than ten years, except as provided in it or having that effect.

■ If there is provision for substantial expenditures of income or substantial legacies payable out of income, then the income is not to be used for accumulation only while such expenditures or legacies remain unpaid, provided they are not colorable to hide the real intent of the testator to set up a trust for accumulation only. We think that when a trust provides for large amounts to be paid out of annual income with an accumulation of the balance added to the corpus, it is not while that status exists a trust for accumulation only. Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Ramage v. First Farmers & Merchants Nat. Bank, 249 Ala. 240, 30 So.2d 706.

■ On former appeal we gave what we then and now consider good and sufficient reasons for the conclusion that the trust here in question was not for the purpose of accumulation only and had no such present effect and was not, therefore, controlled by section 146, Title 47, Code.

■ So that the income not being for accumulation only, the principle applicable to accumulations as it existed at the common law prevails. Ramage v. First Farmers and Merchants Nat. Bank, supra; Henderson v. Henderson, supra. That principle under no aspect makes accumulations illegal for a period of twenty-one years after testator's death, whether or not the estate had vested. It is the rule against perpetuities at common law which also applies to accumulations. This requires a trust whether private or charitable to vest within said period. If the trust is charitable and vests in the trustee at death of testator and payable according to directions in the will for the benefit of charities then or thereafter ascertainable, it vests within the meaning of the common law so as not to be affected by the principle of remoteness, as we have fully here discussed the subject. When a chraitable trust has vested, accumulations not inhibited by the statute are not invalid. St. Paul's Church v. Attorney General, 164 Mass. 188, 203, 41 N.E. 231; 10 Am.Jur. section 21, page 600, notes 17, 18 and 19; 2 Sims on Law of Future Interests, page 508, section 591; Codman v. Brigham, supra.

■ Of course the vital factor in a perpetuity is that the date of its vesting is postponed beyond the period prescribed. Within that period before vesting an accumulation is not a perpetuity. It is not an unlawful perpetuity at any time after the estate becomes vested. City of Philadelphia v. Girard's Heirs, 45 Pa. 9, 9; Wright, Pa., 9, 84 Am.Dec. 470.

It is said in Reasoner v. Herman, 191 Ind. 642, 653, 654, 134 N.E. 276, 280: "Where a charitable gift vests, a direction for accumulation, being for the *management of the fund* and not of the essence of the gift, will not, even if invalid, affect the validity of the gift," citing many cases. And on page 654 of 191 Ind., on page 280 of 134 N.E.: "Appellees talk of * * * accumulation as going through the ages until it becomes a public menace. There is no occasion for alarm; for this may be limited by a court of equity, so that it will not be a public menace, and so that it will best subserve the main purpose, charity." It is also said in the Herman case, 191 Ind. page 652, 134 N.E. page 280, that this is controlled by the cy pres doctrine of liberal construction which will cause courts to be keen to discover whether the main purpose is charity and, if it is, to treat the testator's *machinery of administration* not as conditions precedent to vesting, but as suggestions regarding the management. It also states that it is applying the cy pres rule of *liberal construction as observed in this Country,* not the prerogative cy pres as applied in England, and that this distinction has been made to the point of satiety in all the states. 191 Ind. page 653, 134 N.E. page 280.

■ It is apparent that the power of a court of equity with respect to the machinery of administration, sometimes called

judicial cy pres, is sufficient to enable such a court to take care of any menace that may arise from accumulations, if any should occur after the death of testator, when the estate then vested. St. Paul's Church v. Attorney General, 164 Mass. 188, at page 204, 41 N.E. 231; 2 Bogert, Trust and Trustees, § 353, pages 1082, 1083; 3 Scott on Trusts, section 401.9 (page 2142); Perry on Trusts, section 399; 3 Page on Wills, page 678; 2 Sims on Law of Future Interests, page 508, section 591.

■ The will of Gov. Henderson provides that after twenty years from his death all the income for twenty years thereafter shall be used annually for the first charity provided, and it is only if any of such income should not be so used in any year that it must be added to the corpus. This merely provides for a contingency occurring contrary to his direction during a period of twenty years beginning at the expiration of twenty years after his death, and after the vesting of the estate, and is in no sense an accumulation such as will probably be a public menace "through the ages". But if it should be so administered as to be such a public menace a court of equity, under its powers of approximation or deviation sometimes called judicial cy pres, could then correct the evil in some manner not necessary to be here declared, to promote the charity specified dependent upon the situation then existing, but not by distributing it among the heirs.

The authorities agree that a court of equity has such power whether it is called equitable deviation or judicial cy pres. 2 Perry on Trusts, section 728, page 1242. It is not prerogative cy pres. They do not support the theory that such income is subject to distribution among the heirs of the testator, but to the beneficiaries of the charity. St. Paul's Church v. Attorney General, supra, 164 Mass. page 205, 41 N.E. page 237; Brigham v. Peter Bent Brigham Hospital, supra (7), see 134 F. pages 524 and 525.

The same principle has application to the provision for the maintenance of crippled children in a hospital directed to be constructed and maintained beginning twenty years after the organization of the educational association.

We think the trust estate vested at the death of Gov. Henderson both as to the legal and beneficial interests, and that the accumulations are not controlled by our statute and are not violative of the common law rule in that respect.

There is nothing before us in respect to the guardian ad litem fee. The court dismissed the cause after sustaining the demurrer and taxed the complainants with the costs. In doing so the court expressed the view that it was by authority of section 65, Title 11, Code, which provides for the court to use his discretion in so doing. Nothing has been done in respect to the guardian ad litem fee. There has been no proceeding to have it fixed. The trial court must first act on it in a direct proceeding for that purpose. That action may then be reviewed. It is not necessary to remand the case for that purpose. It is supplementary to the final decree.

Affirmed.

STAKELY, J., concurs.

LIVINGSTON, J., concurs in the result.

LAWSON, J., concurs specially as noted by him below.

BROWN and SIMPSON, JJ., dissent.

LAWSON, Justice (concurring specially).

I am of the opinion that the trust provisions of the will of former Governor Henderson, here under consideration, do not violate the rule against perpetuities or the Alabama statute which places a restriction upon trusts for accumulation only. § 146, Title 47, Code 1940. I, therefore, concur in the conclusion reached in the opinion of Mr. Justice Foster to that extent, on the authority of the opinion of this court in the case of Henderson et al. v. Troy Bank & Trust Co. et al., 250 Ala. 456, 34 So.2d 835. I also concur in the conclusion reached by Mr. Justice Foster that the said trust provisions do not violate the principle applicable to accumulations as it existed at common law.

BROWN, Justice (dissenting).

On the former appeal from a decree of the circuit court sustaining the defendants' demurrer to the bill filed by some of the next of kin and heirs at law of Charles Henderson, deceased, against the Troy Bank and Trust Company, a corporation, executor and trustee of his estate and the legatee and trustee of his residuary estate, and other persons interested in his will and estate, the complainants (appellants now and on the former appeal), challenged the validity of the bequest to said trustee on two grounds. To state them in general terms: (1) that said bequest violated the rule against perpetuities and (2) that it created or attempted to create an unlawful trust for accumulation *in perpetuam*. The specific bequests set up for the use of the testator's wife, sister and other favored relatives are not questioned in this proceeding.

In the opinion of the Court on the former appeal in which the writer concurred the will was construed as setting up a single trust; that the provisions made for the use of testator's wife and sister were not separate trusts but separate accounts resting on the corpus of the residuary estate. This thought seems to have been advanced as a basis for answering the appellants' contention that the major trust embracing the residuary estate of $3,000,000 existing at the testator's death, producing an income of $130,000 per annum and since testator's death accumulated to $5,000,000 and producing an annual income of $150,000, was intended by the testator as a trust for accumulation in violation of public policy and the laws of this state. This appears from the following pronouncements in the opinion on the former appeal: "We think the gift is *unconditional* and vested immediately upon the probate of the will. *Futurity is connected with the trust only as to the disbursement of income* which goes first to certain named individuals, then *for public schools and then to a hospital.* From the time of the death of Charles Henderson the fund and the income therefrom are dedicated to charity and in the initial stage for payment out of the income of certain *charges*, it being expressly provided that the charges must and within lives in being or twenty years. The legal estate vested immediately in the trustee and the *equitable estate in the part of the public to be benefited*, subject to certain allowances payable only from accrued income.'" Henderson v. Troy Bank & Trust Co., 250 Ala. 456, 466, 34 So.2d 835, 843. [Italics supplied.]

Referring to the testator the opinion observed: "At the time of his death in 1937 Charles Henderson had an estate worth $3,000,000, which produced an annual net income of $130,000. He had no children or grandchildren. No one was dependent on him for support except his wife and perhaps his sister. His first concern was to provide for his wife and sister for whom he provided an aggregate income of $30,000. It seems to us that the will shows real concern that they should receive this amount tax free and further that his estate might not produce this amount. He *instructed his trustee to set up separate accounts* for them, *not separate trusts*, but an arrangement of 'preferring them over the others' and also of preserving the tax free idea. He made the allowances to his collaterals, aggregating $8600, secondary to those of his wife and sister. * * *." [Italics supplied.] Henderson case, supra.

It is familiar law often declared in our decisions that one who has accumulated an estate may dispose of it by will as he may desire and the *intention of the testator is the law of the will* so long as it does not violate the public policy of the state as evinced by the constitution and laws thereof. To state this principle in different words, "A testator has the right to dispose of his entire estate with such restrictions and limitations, not repugnant to established law, as he sees fit." Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Thurlow v. Berry, 249 Ala. 597, 32 So.2d 526.

We return to paragraphs 8 and 9 of Item Four of the will setting up the trusts for the use and benefit of Mrs. Henderson and Mrs. Julia Weedon:

"8. Upon my death, the trustee shall set aside in a separate fund sufficient tax free securities so that the net income therefrom, as provided in the con-

tract for the payment of interest thereon, shall not be less than $25,000 per year. The sum of $25,000.00 per annum to be paid to my beloved wife, Laura M. Henderson, in monthly installments, so long as she shall live. The said income so paid to her to be used by her for her support, maintenance and comfort, but as to the use, expenditure of disposition and application of same, she shall be the sole judge.

"In the event there be any excess or any income of and above the sum of $25,000 payable to my said wife from the securities set aside in this fund, *said excess income shall be treated as any other part of the income of the estate* and shall become a part of the residue of the income.

"9. Upon my death, the trustee shall likewise set aside in a separate fund, sufficient tax free securities so that the net income therefrom shall be not less than $5,000 per year, and shall pay the said sum of $5,000 per year to my beloved sister, Julia H. Weedon, in monthly installments, so long as she shall live. The said income to be paid to her to be used by her for her support, maintenance and comfort, but as to the use, expenditure of, disposition and application of the same, she shall be the sole judge."

It seems to be clear that the intention of the testator here was to set up independent trusts for each his wife and sister resting upon a distinct corpus carved out of the residuary estate, such trusts to continue during the lives of the named beneficiaries and at their deaths the separate corpuses to revert to the residuary estate and become unexpendable for all time.

Various and sundry provisions in said will show the intent of the testator that the trust created by the bequests to the bank as trustee should accumulate and that lapsed legacies and unused or unexpended income should be added to the corpus and become unexpendable. The bequests made to specific individuals are so inconsiderable as compared to the immense estate left the bank as trustee as to shed little or no light on the testator's intent other than he intended to remember them to the extent of such bequests, yet with the major purpose of building up and accumulating the unexpendable corpus.

The rule against perpetuities and the rule against setting up trusts for accumulation are essentially and basically rules of public policy founded upon the known cupidity of mankind to hold on to and attempt to control earthly accumulations beyond the grave. These rules are designed to prevent "ironhearted schemes of settlement which result in withdrawing property for so long from all the uses and purposes of social life." See 4 Kent. 283, 13th Ed. 307, footnote. Such scheme violates the statute and also the common law rule against accumulations.

The statutory requirement against accumulations is as follows: "No trust of estate for the purpose of accumulation only can have any force or effect for a longer term than ten years, unless for the benefit of a minor in being at the date of the conveyance, or if by will, at the death of the testator; in which case the trust may extend to the termination of such minority." Code of 1940, Tit. 47, § 146. The effect of our statute is to limit the period of accumulation to ten years from the date of testator's death or until the termination of the minority of such minor. Code of 1940, Tit. 1, § 3; Carter v. Balfour's Adm'r, 19 Ala. 814; Clark v. Goddard, 39 Ala. 164, 84 Am.Dec. 777; Nelson v. McCrary, 60 Ala. 301.

An examination of the will here involved, as we will undertake to show, reveals a studied design and purpose on the part of the testator to set up a pattern of settlement which would tie up the residuary estate and its accumulations (which must necessarily follow), not for ten years or for twenty years from the testator's death, but *in perpetuam*. To hold that such settlement does not violate our statute (Code of 1940, Tit. 47, § 146), would be to emasculate said statute by judicial *ipsi dixit*. The opinion on the first appeal upholds the alleged charitable trust on the theory that the legal estate vested immediately on the

death of the testator in the trustee and the equitable estate *"in the* part of the public benefited," a class wholly undefined and undefinable. Crim et al. v. Williamson et al., 180 Ala. 179, 60 So. 293.

The language of Item Four of the will is as follows:

"I hereby give, devise and bequeath all the rest and residue of my personal property, real, personal and mixed, including all choses in action, stocks, bonds and other securities, of which I may die seized and possessed or over which I may have testamentary control, or to which I may be in any way entitled, of whatsoever the same may consist, and wherever situated, to Troy Bank and Trust Company, its successors and assigns, *to have and to hold, absolutely and in fee simple forever,* the said residue and remainder, in trust, however, with the power and for the following uses and purposes, to-wit: * * *." [Italics supplied.]

This item of the will leaves no room for doubt as to the character of title the testator intended to vest in said trustee nor the duration of its holding. The language *"to have and to hold absolutely and in fee simple forever,"* embraces the entire title to the corpus, leaving nothing to vest in any one or in any class or group, except an equity in the usufruct, rents and earnings of the corpus which remains the property of said trustee unless vested in some other legatee by the provisions of the will, within the rule against perpetuities.

The language of Item Five of the will is as follows:

"*At the expiration of twenty years after my death and after all the bequests herein shall have been paid as herein directed, my said trustee shall cause to be formed an association to be known and styled as the 'Charles Henderson Education Association.'* This Association shall have no capital stock, have its principal place of business in Troy, Pike County, Alabama, and its purpose shall be to encourage and foster education by the erection and equipment of school buildings as hereinafter set out. *The directors or managers of said association shall be three in number, bona fide citizens of Pike County, Ala., men of good repute and standing in their community, of recognized ability, and interested in the welfare of said County.* They shall be elected annually by the directors of the Troy Bank and Trust Company of Troy, Alabama, and may be selected in whole or in part from its directors, and shall serve until their successors are elected and qualified. The first election of such directors or managers shall be on the formation of such association, then annually thereafter. *After said association has been fully formed, the corpus of the estate, including what has been added to the corpus since my death, shall be held intact by the trustee and the trustee shall pay to the association, which has been formed, from time to time as needed, the income of the estate.* The county is deficient in suitable school buildings, and the whole net earnings from the estate are to be devoted to building school buildings within the County of Pike as may be needed. The State Superintendent of Education shall be ex-officio a member of the Board.

"No more than $50,000.00 shall be devoted to the construction and equipment of any one school building. *This cost shall be independent of the cost of the lot. The lot upon which the building is to be erected is supposed to be donated by individuals or the community in which the building is erected.* No funds are to be spent in the nature of repairs or enlarging buildings, and the buildings erected shall be with brick, stone or concrete. *All buildings erected shall be on land, the title to which shall be in the name of the State of Alabama.*

"*The funds that are to be used in any particular year, must be paid from the income of the particular year. If all the income of any one year shall not be used for the buildings erected that particular year, at the end of the year it shall go into the corpus of the estate,*

*and be treated thereafter as part of the original corpus.*

"1. *When the said association has been so formed and supplied with funds, the directors or managers thereof shall determine when and where they will commence their first building.* All buildings shall be of some permanent material, brick, stone or cement, and shall be erected in incorporated towns or cities, and in duly constituted school districts which are levying the constitutional three mill tax. *The location of suitable lands for such buildings shall be first provided by the towns and cities or school districts in which they are located and be free of all encumbrances before any such buildings are erected thereon.* The amount of funds to be expended on each of such buildings shall be as said directors may deem adequate *and to be paid directly to the contractor erecting or equipping the same, with proper vouchers.*

"Every building shall be erected according to plans and under the direction and co-operation of an architect secured and paid by the directors. On each building there shall be the following inscription, 'Memorial to Charles Henderson.' The buildings herein provided for shall be complete individual units and not in the nature of additions to other buildings." [Italics supplied.]

These provisions of the will, like the provisions of Item Four, leave no room for doubt as to when the beneficial use will vest, if at all, nor as to the beneficiary named. There is no provision in the will for supplying funds for school house sites or for maintaining or repairing school houses if and when they are once constructed, or for vitalizing them with management and teachers. They are left, if ever erected, as cold monuments of brick and stone.

As heretofore pointed out as to the special devise to the wife and sister, the will sets up for each a special corpus consisting of tax free securities to produce an income of $30,000, twenty-five thousand for the use of the wife and five thousand for the use of the sister to continue for their respective lives, the excess or surplus of such income each year to go to vest and become a part of the unexpendable corpus of the residuary estate. At the death of the respective beneficiaries such special tax free securities constituting the special corpus and any unused part of the income return to and become a part of said unexpendable residuary corpus.

Commencing *one year* after the testator's death and continuing up to twenty years after the testator's death the net income from the major or "charitable trust" is dedicated by the will to the support of the bequest to favored relatives of the testator and his wife and to accumulation of the corpus. The amount of the net income necessary to support and meet such devises,—$8,600 being about five percent of that income. The net income for the first year after testator's death and the surplus or unused income thereafter until the end of twenty years go to accumulation and become a part of the unexpendable corpus of said residuary estate.

In the face of the explicit provisions of the will illustrating and delineating the testator's intent, no part of the surplus of the income from the alleged "charitable trust" could vest in any person, group or corporate entity other than the trustee bank and then only for accumulation until after the expiration of twenty-one years.

Therefore, the holding of the Court in the opinion on the first appeal that said net income from said trust vested in "that part of the public benefited" at Henderson's death is contrary to the provisions of the will. So also are the utterances in the opinion of my brother Mr. Justice Foster,—"The devotion of the entire income to charity, the construction and equipment of school buildings, is a fixed and vested dedication of all the income to that purpose." To adopt such view would be tantamount to rewriting Charles Henderson's will and not an interpretation thereof. This the Court has no power to do.

So far as the use for the construction of school buildings is concerned, futurity is annexed to the substance of the gift.

Crawford v. Carlisle, 206 Ala. 379, 89 So. 565. The beneficial use for erecting school buildings is by the will attached to the *current year's income* and under Item Five cannot attach until the expiration of twenty years from the death of the testator. Therefore the first year's income to which the use could attach for building school houses is the income for the twenty-first year which, according to business custom and practice prevailing at the time of the testator's death and the strict provisions of the will, could not be paid to the educational association until it was earned and available at the end of the twenty-first year. It has been suggested in consultation, the payments for this year's income could be made monthly. The will does not so provide and if such arrangement could be made it would not save the trust from the application of the rule against perpetuities. Under this rule the beneficial use *must*, not may, vest to be valid. And the year's income could not be used then until the board selected the site and lot and such lot was purchased and paid for by some individual or by the town, city or school district in which the school building is to be located and this lot must "be free from all incumbrances before any such building can be erected thereon" and "All buildings erected shall be on land, the title to which shall be in the name of the State of Alabama."

The State of Alabama, named the beneficiary, may, if the devise is valid, accept the trust and the burden of maintaining and vitalizing it by supplying management and teachers for using the same. Such acceptance must be by legislative act and rests in legislative discretion. Mayor and Aldermen of City of Huntsville v. Smith et al., 137 Ala. 382, 35 So. 120.

> "The courts in applying the rules against perpetuities regard all limitations as void *ab initio* which are not so framed as to take effect of necessity within the legal period (under the facts of this case 21 years), if at all. * * *." [Parenthesis supplied]—Lyons et al. v. Bradley, 168 Ala. 505, 514, 53 So. 244, 247; Ould v. Washington Hospital, 95 U.S. 303, 24 L.Ed. 450; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565;

Ramage v. First Farmers & Merchants National Bank of Troy, 249 Ala. 240, 30 So.2d 706; Fosdick v. Fosdick, 6 Allen, Mass., 41.

The rule against perpetuities applies to a devise to the state the same as to individuals, classes or corporations. Yates v. Yates, 9 Barb., N.Y., 324.

This rule is applicable to both real and personal property. Code of 1940, Tit. 47, § 16.

The restrictions and limitations stated in the will by the testator as "conditions precedent" to the vesting of the beneficial use were erroneously treated in the first opinion as "but rules or regulations under which the communities are to be selected to receive the aid of the fund already vested." The use of the words "at", "when", "after", "before" and "provided", "restrictions," "limitations" and "condition" used in the will necessarily make said restrictions, limitations and conditions, "conditions" precedent to the vesting of any interest, rendering such interest contingent. Phinizy v. Foster, 90 Ala. 262, 7 So. 836; American National Bank of Camden v. Morganweck, 114 N.J.Eq. 286, 168 A. 598.

We, therefore, conclude that the limitations over against the vesting of the beneficial use or charitable interest violate the rule against perpetuities and render the bequest void *ab initio* and it must fall.

As going to show the intent and temper of the testator in drafting his will and his major purpose to accumulate his estate and guide its administration *via mortmain* and his disregard of the public policy of the State, we note the following:

> "And the stock in the Troy Bank and Trust Company (of which testator owned 65%) shall not be sold or otherwise disposed of by the executor or trustee so long as said Troy Bank and Trust Company remains trustee of the trust hereinafter provided. [Parenthesis supplied.]

> "The proceeds of all such sales, as well as any other funds belonging to the estate which are not necessary to be otherwise used in the administration of this trust, shall be by the trustee from

time to time invested in such classes of securities or investments as the trustee may in its discretion deem advisable, *whether such investments are authorized by the constitution or laws of the State of Alabama or not.* The trustee is authorized in its discretion to retain and hold in trust any stocks, bonds, securities, or other property, real, personal or mixed, in which my estate or any part thereof may be invested at the time of my death, or to which my estate may become entitled after my death." [Italics supplied.]

"In the event that there be any excess of income over and above the $5,000.00 payable to my said sister from the securities set aside as above mentioned, said excess shall be treated as any other part of the income of said estate and shall be subject to all the *terms and conditions* and *limitations hereinafter provided* with regard to the said residue." [Italics supplied.]

"Upon the death of my said wife or sister, the securities in the fund of the person so dying shall become part of the residue of the trust estate, subject to all the terms, conditions and limitations as hereinafter provided." * *

"The corpus of the estate should increase, especially with the provision that when any of the bequests mature, either from death of the beneficiary, or otherwise, the amount of such beneficiary's bequest shall remain and become a part of the corpus of the estate after each year when the bequests have been paid, and all expenses with taxes have been satisfied, that *whatever remains from income of that particular year shall be entered as part of the corpus of the estate and subject to the same treatment thereafter as the original corpus of the estate.*" [Emphasis supplied.]

"I hereby designate and appoint my faithful friend, Lane Enzor, of Troy, Alabama, as special agent, attorney-in-fact or proxy to vote at any and all meetings of stockholders, the shares of stock held by me at the time of my death in said Troy Bank and Trust

Company, the trustee above designated, and also the shares of stock held by me at the time of my death in the Standard Telephone and Telegraph Company. And in the event said trust estate shall thereafter acquire any further or additional shares of stock in said Troy Bank and Trust Company or Standard Telephone and Telegraph Company, he shall likewise be empowered to vote such additional shares at any and all meetings of stockholders. He is thoroughly familiar with these properties and has shown himself to be a man of good judgment. On the death of said Lane Enzor or his resignation, refusal or incapacity to act, the directors of the Troy Bank and Trust Company, or a majority of them, shall select and designate a suitable successor to him who will perform the said duties above referred to. And likewise, thereafter, when a vacancy occurs a successor shall likewise be chosen. Said power to vote said shares of stock shall exist and continue so long as the Troy Bank and Trust Company continues to act as trustee of my estate and so long as said trust estate owns shares in the Standard Telephone and Telegraph Company." * * *

" * * * the watchword shall be that nothing but the income from the estate must be used from year to year, but sums added to the corpus each year should be striven for.

" * * * If any part of the income for any one year shall not be used, it shall be returned to the trustee and by the trustee added to the corpus of the estate and invested as funds theretofore shall have been invested, so as to increase the income of the estate. * * *"

These provisions clearly show that the testator intended to set up a trust for accumulation in violation of our statute and the rules of the common law.

The *cy pres* doctrine repudiated by this Court more than a hundred years ago and repeatedly since, renders that doctrine inapt. The doctrine of equitable approximation having to do only with administra-

254

tive details arising from the unanticipated circumstances since the creation of the trust has nothing to do with the vesting of an interest or the rule against perpetuities. Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726. Neither of these doctrines can be invoked to save the major trust from the infirmities heretofore pointed out.

A trust resting on the residuary estate being void *ab initio*, is a part of the general estate of Henderson, passing to the next of kin under the laws of descent and distribution. Tarver v. Weaver, 221 Ala. 663, 130 So. 209.

I therefore respectfully dissent.[1]

SIMPSON, Justice (dissenting).

I agree with Mr. Justice Brown that the residuary trust provisions of the will violate the rule against perpetuities and the law of accumulations.

Due to the great importance of the case, but with great respect for the two opinions, I should like to give my own analysis of the questions involved, since neither opinion exactly expresses my views.

I, likewise, have become convinced that a basic fallacy in the deliverance in the first case, where a construction was sought on demurrer, is epitomized in the conclusion that the equitable estate vested immediately on the death of testator "in the part of the public to be benefitted, subject to certain allowances payable only from the accrued income," (250 Ala. 467, 34 So.2d 843) *a fortiori* the rule against perpetuities has been satisfied. The fallacy of such a statement of principle is manifest, since some part of the public is always the beneficiary of a charitable trust, otherwise it would not be

such a trust. Hence, it is but to say that the rule does not affect charitable trusts—quite an erroneous conclusion.

It seems to me that futurity is annexed to the substance of the gift and that the remainder, rather than being vested, was contingent, resulting that the charitable provisions of the will fall within the ban of the rule.

"The chief characteristic which distinguishes a 'vested remainder' from a 'contingent remainder' is the present capacity to take effect in possession should the possession become vacant * * *." 44 Words and Phrases, Perm. Ed., page 186; Flanagan v. Spalti, 225 Iowa 1231, 282 N.W. 347; Wright v. City of Tuscaloosa, 236 Ala. 374, 182 So. 72, 77; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565.

"A 'vested remainder' is an estate to take effect after another estate for years, life, or in tail, which is so limited that, if that particular estate were to expire or end in any way at the present time, some certain person, who was in esse and answered the description of the remainderman during the continuance of the particular estate, would thereupon become entitled to the immediate possession, irrespective of the concurrence of any collateral contingency." 44 Words and Phrases, Perm. Ed., page 200.

Assuming then, as it must be in applying the rule, that all of the life annuitants died immediately after the testator—or even if they died today—and even granting, *arguendo,* the public was supposed to be the equitable owner, there could be no vesting

1. The following cases support the conclusions stated in the foregoing opinion.

Perpetuities.

Yates v. Yates, 9 Barb., N.Y., 324; Bascom v. Albertson, 34 N.Y. 584; National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649; Easton v. Hall, 323 Ill. 397, 154 N.E. 216; Holmes v. Welch, 314 Mass. 106, 49 N.E.2d 461, 157 A.L.R. 896; City of Columbia v. Monteith, 139 S.C. 262, 137 S.E. 727; In re Lord Strathden v. Campbell, 3 Chancery 265 (Brit.); Muir v. Archdall, (B.R.C.) 10 B.R.C. 559; Malmquist v. Detar, 123 Kan. 384, 255 P. 42; Salvation Army of Topeka v. Watts, 130 Kan. 714, 288 P. 764; Lovelace v. Marion Institute, 215 Ala. 271, 110 So. 381; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565; Lyons v. Bradley, 168 Ala. 505, 53 So. 244; Fosdick v. Fosdick, 6 Allen, Mass., 41.

Accumulations.

Hewitt v. Green, 77 N.J.Eq. 345, 77 A. 25 (Headnote 10); Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Boynton v. Hoyt, 1 Denio, N.Y., 53.

in that part of the public "to be benefitted," since that particular class—the unborn school children twenty years after testator's death—were not and are not now in existence. There would, therefore, be no right to the immediate possession "irrespective of the concurrence of any collateral contingency," to quote from the last above. There would be a definite gap of many years between the day the annuitants might die and the twenty-year period that must elapse before anything at all can be done under the will toward the charitable gift. The equitable estate—laying aside for the present discussion of the various contingent features specifically conditioned in the will—therefore could not be vested, so must be contingent.

As observed above, it should be especially noticed that if the vesting of the equitable estate in the public satisfies the rule (as was erroneously held on the first appeal), it is the same as saying the rule does not apply to charitable trusts, because some part of the public is always benefitted by such trusts. The law on the subject does not operate to that result. Gray, Rule Against Perpetuities, 4th Ed., §§ 592–597, pp. 570–572; § 605, p. 580; Scott on Trusts, § 365, p. 1967.

As I say, futurity seems to be annexed to the substance of the gift and I can rationalize no distinction in principle between the will in the instant case and the wills construed in many cases cited, such as Muir v. Archdall, 10 B.R.C. 559 (an English [Australian] case with full cy pres both judicial and prerogative), holding that a gift to St. Andrew's Cathedral "when they should build" was too remote and a violation of the rule, yet there the congregation was a part of the public to be benefitted; Malmquist v. Detar, 123 Kan. 384, 255 P. 42, a devise directing trustees to pay to the first hospital organized in the town violated the rule, yet there the public in that town was the part to be benefitted; American Nat. Bank of Camden v. Morgenweck, 114 N.J.Eq. 286, 168 A. 598, trustees to pay son for life and widow, if he left one, then to support hospital; there the inhabitants of the community were the public to be benefitted, yet the holding was that the rule was violated.

Many other sustentive authorities could be cited, but see also Easton v. Hall, 323 Ill. 397, 154 N.E. 216, and In re Tift, 110 Misc. 624, 180 N.Y.S. 884.

There are many contingent features of this will precedent not only to the vesting but to the execution of the trust. These are conditions to the vesting of the beneficial ownership. The testator so called them. To mention some: (1) The association might not be formed within twenty-one years from January 5, 1937, and it cannot be formed before twenty years, and the testator did not require that *it must be formed* within twenty years after the death. (2) It is possible that no one will donate a lot free of encumbrances within twenty-one years (or ever) and not one cent of the gift (annual income as and when earned) is due until all conditions are met and a schoolhouse built. (This cannot be brushed aside as a mere "detail in administration.") (3) The three-mill tax might not be levied anywhere in the county when the time came to pass for the buildings to be erected. (4) Title to the land on which the buildings are to be situated shall be in the State and no court could force the State to accept and use the property for the testator's purposes within twenty-one years from the death or at any time—hence a precedent contingency which cannot be ignored without the application of the chancellor's cy pres power.

The expressions in the will "at" (expiration of twenty years after my death); "after" (all bequests have been paid, etc.) "shall" (cause to be formed an association) and "before" (any such buildings are erected) are words making the conditions precedent to vesting.

" 'It is a well settled rule of construction, that a gift of a legacy "at," or "when," or "after" a given event occurs, vests only upon the happening of the event. * * * Where the time is annexed, not to the payment merely, but to the gift itself, the legacy does not vest till the period arrives.' Howell, Ex'r, v. Green, Adm'r, 31 N.J.L. 570." Clark v. Union County Trust Co., 127 N.J.Eq. 221, 12 A.2d 365, 368.

"* * *· If we should construe away the terms 'within' and 'after,' how far might the court go in changing the terms of a will? * * *" In re White's Estate, 130 Kan. 714, 288 P. 764, 766.

See also Phinizy v. Foster, 90 Ala. 262, 7 So. 836.

Therefore, conceding the public to be intended as the eventual owner of the beneficial interest, still that interest is not vested, but subject to contingent conditions, with the possibility that they might not occur within the twenty-one year period, as is pointed out in Judge Brown's opinion. As I read the will, the scheme devised for the use of the fund was exclusive of any other scheme and therefore vesting of interest was conditioned on the effectuation of that scheme and that scheme alone. To adopt another could only be done cy pres, without perverting the intention of the testator.

The only gift is the future annual income of future years to a non-existent association on many conditions which might never occur. These conditions cannot be wiped out by equitable approximation used as a substitute for cy pres.

Mr. Justice Foster in his opinion asserts: "In our cases what other courts call judicial cy pres, we call equitable approximation. Lovelace v. Marion Institute, 215 Ala. 271, 110 So. 381; Williams v. Pearson, 38 Ala. 299," and then seemingly uses authorities from the cy pres states to sustain the trust and avert the operation of the rule against perpetuities. I am most earnestly at variance with this conclusion of my learned and respected associate.

I have always understood that cy pres and equitable approximation are distinct and diverse doctrines, and I think the cases in all jurisdictions so recognize it. Alabama has never sanctioned judicial cy pres (except by recent statutory provision), but as a natural and necessary branch of chancery jurisdiction over charitable trusts to relieve the trust from a circumstance which imperils or endangers the charity, the means or details prescribed for its administration may be so molded to carry out the wishes of the settlor as to meet an exigency which may be disclosed by a change of conditions or circumstances; but this does not include the power to alter the terms of the trust or avert the operation of the rule when the bequest is contingent or to an indefinite or uncertain group. The doctrine is limited to varying the terms of administration in handling the fund from what is precisely provided in the will if they have or shall become impossible or impractical of observance exactly as set up, in order to secure the *object* for which the trust was created. Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726, 730.

And we have said "this doctrine of equitable deviation (approximation) applies to private as well as charitable trusts." Thurlow v. Berry, 249 Ala. 597, 605, 32 So.2d 526, 533.

But that doctrine is not judicial cy pres, which authorizes the equity court to exercise its power over charitable trusts it could not exercise over private trusts and apply the bequest, even though it be to an uncertain or unascertainable certain group.

As I understand the cases, when they speak of cy pres they refer only to judicial cy pres. There were in England two distinct kinds of cy pres; the first, that exercised by the king under his "sign manual," an unlimited power to supply the purpose if the purpose were indefinite, such as cases of a devise of property "to the Lord" where it would be given to any church designated by the king. That is prerogative cy pres.

The courts of the United States have never even considered such power (prerogative cy pres) as vested in them, but they have discussed and differed on the cy pres power—judicial cy pres—exercised by the chancellor of England. So, in this country, when the cases speak generally of applying cy pres, the courts have no reference to the prerogative cy pres—the king's power under his sign manual—but to the powers formerly exercised by the chancellors of England. The courts of some states held that this power was inherent and possessed by them and thus employed the English doctrine of judicial cy pres and based their decisions upon it. Massachusetts is the leading cy pres state. Notable

among the cases from that jurisdiction are the leading ones of Brigham v. Peter Bent Brigham Hospital, C.C., 126 F. 796 (arising in Massachusetts) and the companion case of Codman v. Brigham, 187 Mass. 309, 72 N.E. 1008, 105 Am.St.Rep. 394, cited in Mr. Justice Foster's opinion. In applying this doctrine, the Brigham federal case stated [134 F. 525]: "And in such cases, and in such cases only, if the mode pointed out fail, it will provide another mode by which the charity may take, but by which no other than charitable legatees can take." And in the Codman case, the Massachusetts Supreme Court stated: "If, for any reason, it should be impossible to establish such a corporation, the gift would not fail, but *the court would apply the doctrine of cy pres*, and would provide some other method of administering the charity to accomplish substantially the same result." [187 Mass. 309, 72 N.E. 1009.] (Emphasis supplied.)

These cases were cited and considered in consultation as authority to sustain the trust here considered. But they are typical of cases in jurisdictions where judicial cy pres is used to save a charitable trust. Neither Massachusetts nor any of the other jurisdictions applying cy pres would have pretended to exercise the king's prerogative, but specifically adopted the chancellor's cy pres, that power of appointment applicable only in charitable trusts. The Alabama courts have never sanctioned such a doctrine and, until the recent statute (not here pertinent) cy pres as used in other jurisdictions was unheard of in our own jurisdiction. This distinction is fundamental to a correct decision of the question involved.

The authorities adopting cy pres, therefore, are based upon law repudiated by our own court. There are many states which have held to this judicial cy pres, but Alabama, more than one hundred years ago, joined the other group of states repudiating cy pres, that is, judicial cy pres. It is specifically so stated in Carter et al. v. Balfour's Adm'r, 19 Ala. 814, in the following language:

"* * * I do not recognize the doctrine of 'cypres,' which, in substance is, if you cannot find the society specified in the will, or apply the fund to the charity intended by the testator, the court will then apply it to some other charity as nearly analogous to it as possible. The bequests should be paid only to the societies specified in the will, or their authorized agents. *If the societies or either of them did not exist at the time of the testator's death, or cannot now be found, organized and known as above stated,* then the bequest to such society or societies should be considered and disposed of as lapsed legacies * * *" (Emphasis supplied.) (19 Ala. 830.)

And in Williams v. Pearson, 38 Ala. 299, 307, in the following language:

"The power exercised by the English court of chancery, in the two classes of cases just mentioned is not judicial power, and does not belong to our courts. * * * But, [1] the cy-pres doctrine and [2] the prerogative power to carry out indefinite charities being excepted, the law of charities, as administered in the English court of chancery is substantially our law."

Thus, it is crystal clear that we have never sanctioned judicial cy pres as used in some other states, and what we call equitable approximation is *not* what other states call cy pres.

The opinion of Mr. Justice Foster seems to cite this Williams v. Pearson case and the Marion Institute case to sustain the conclusion that what other courts call judicial cy pres we call approximation, but, as I read them, these cases hold just to the contrary. In the Marion Institute case Mr. Justice Sayre took particular notice that while the appeal to equity for permission to mortgage the property against specific directions of the settlor was thought to be under "the equitable doctrine of approximation in virtue of which the court of chancery exercises jurisdiction merely to vary the details of administration in order to preserve the trust and carry out the general purpose of the donor" (215 Ala. 273, 110 So. 382), yet that the real purpose was to "call for an application in some sort of the doctrine of cy pres," which

he held could not be done, thus clearly distinguishing between the two doctrines. The opinion of Judge Sayre then, in illucidating the difference, states that "the equitable doctrine of approximation is said to be in reality a principle of judicial construction resulting, not from an arbitrary power exercised in disregard of the donor's wishes, but based on a judicial finding of his intention as applied to new conditions." And Williams v. Pearson specifically points out that neither judicial cy pres nor the prerogative power exercised by the English king to carry out indefinite charities has ever been applied in our own jurisprudence and that we were left with administering charities exclusive of these two doctrines. Quotation, supra. See also Trustees of Cumberland University v. Caldwell, 203 Ala. 590, 84 So. 846; King v. Banks, 220 Ala. 274, 124 So. 871; Crim v. Williamson, supra.

Mississippi holds to the same doctrine as Alabama and against the principle of judicial cy pres. In the case of National Bank of Greece v. Savarika, 167 Miss. 571, 148 So. 649, 654, a good exposition of the distinction between the two doctrines, with quotation from the Marion Institute case in explanation thereof, appears where it is stated:

"'* * * the cy pres practice is not to be confused with the equitable doctrine of approximation which has grown up in the judicial administration (as distinguished from judicial creation) of charitable trusts. The ecclesiastical rule of cy pres is one thing, and the equitable rule of approximation is distinctly another. Their purpose, and their application are entirely different. As said by the Alabama court (Lovelace v. Marion Institute et al., 215 Ala. 271, 110 So. 381), "The appeal in this case is not to any cy pres power of the court, but to the equitable doctrine of approximation, in virtue of which the court of Chancery exercises jurisdiction merely to vary the details of administration, in order to preserve the trust, and carry out the general purpose of the donor."'"

The following is a good explanation of the application of judicial cy pres by the jurisdictions holding to that doctrine, and is distinctly apposite to the case in hand:

"* * * [a] gift may be saved by the application of the cy pres doctrine.

"A common situation is that which arises where a testator leaves property to or in trust for a corporation to be organized after his death for certain charitable purposes. The bequest is valid if the corporation must be organized within the period of the rule against perpetuities. Even if the corporation may not be organized within that period, the bequest is nevertheless valid if the testator has a general intention to devote the property to the specified charitable purposes. In such a case there is an immediate gift to charity subject to no condition precedent; and although the particular mode of application is subject to such a condition, that does not invalidate the gift. Under the doctrine *of cy pres* the general charitable intention of the testator will be effectuated, even though the particular method of application specified by him should fail. *If, indeed, the testator manifested an intention that the property should be applied to charitable purposes only in the method specified by him, only through the organization of a corporation, or if the doctrine of cy pres is rejected, then the bequest fails.* [We interpolate this is the rule in Alabama where cy pres is rejected and applicable to the trust at bar.] Where the gift is valid the court will exercise its discretion as to the mode of administering it. If the corporation is formed within a reasonable time, the court will direct that the corporation receive the property. If it appears that the corporation will not be formed within a reasonable time, the court will not wait until it is formed but will direct the application of the property in some other manner to the designated charitable purposes." (Emphasis supplied.) Scott on Trusts, § 401.8, pp. 2139– 2140.

In the same section of Scott there will be found a very pertinent example of the application of the cy pres principle and when the trust will fail even using judicial cy pres. It is thus stated by Professor Scott:

"* * * If the gift is contingent upon the establishment of the institution, it fails since the contingency is too remote. If, however, the testator had a more general charitable intention, if the establishment of the institution was not an essential part of his scheme, there is an immediate and unconditional gift to charity, and the gift will not fail *but the court will apply the money cy pres.* Similarly where property is given in trust to establish a charitable institution when third persons shall give a site for the institution or shall contribute funds for its support, the gift is valid *if it is not contingent upon the giving of such a site or the making of such contributions.* In such a case, if the site is not given or the contributions made, the court can apply the *doctrine of cy pres.*" (Emphasis supplied.)

Thus is the application of judicial cy pres which even if applied in the present case would indicate that the trust could not be relieved from the obliquities which beset it, since not only is the donation of sites contingent, but also establishment of the foundation is prerequisite to the scheme and it may not be formed within the period.

It is also clear that this authority, and for that matter, Mr. Gray and all others, in speaking of cy pres meant judicial cy pres and not prerogative cy pres, and equally clear it is to me that the equitable doctrine of approximation authorizing the varying of the details of administering the trust to meet changed conditions in carrying out the settlor's intention cannot be said to be the same as cy pres and cannot be used to save the trust in the present case.

To rationalize further, "the law of charitable uses does not protect a gift for a charitable purpose, made to take effect after a gift to an individual, upon a condition not necessarily to be fulfilled within the period prescribed by the rule against perpetuities." In re Potts' Will, 205 App.Div. 147, 199 N.Y.S. 880, 883; Attorney General v. Gill, 2 P.Wms. 369; In re Johnson's Trusts, 2 L.R.Eq. 716; Merritt v. Bucknam, 77 Me. 253; Merrill v. American Baptist Missionary Union, 73 N.H. 414, 62 A. 647, 3 L.R.A., N.S., 1143, 111 Am.St.Rep. 632, 6 Ann.Cas. 646; Perry on Trusts (6th Ed.), 736.

"* * * if a gift is made in the first instance to an individual, and then over, upon a contingency which may not happen within the prescribed limit, to a charity, the gift to the charity is void, not because the charity could not take at the remote period, but because it tends to create a perpetuity in the individual who is the first taker, by making the estate inalienable by him beyond the period allowed by law. * * *" Odell v. Odell, 10 Allen, Mass., 1, 7.

But, "A gift to a charity, not preceded by a gift to an individual, is generally held to be valid, although a period greater than prescribed by the rule against perpetuities may elapse before the taker is empowered to receive the gift." In re Potts' Will, supra, 199 N.Y.S. 884. That opinion then points out on page 885 the following:

"An executory gift to a charity, without a precedent gift to private persons, upon the organization of a corporation to execute the charity, is held valid upon the theory that the general charitable purpose of the donor being immediate, a court of equity, having the power from the beginning to execute the charity in its own way, notwithstanding the fact that the donor's method may cause delay, will regard the gift as immediate, involving neither postponement nor suspension. This theory explains why a similar gift made to follow a gift to private persons is held to be invalid. In that case the existence of an intent to make an immediate gift is conclusively denied by the act of the donor in interposing a prior gift. The theory is explained by Professor Gray as follows:

" 'If the court, however, can see an intention to make an unconditional gift to charity (and the court is very keensighted to discover this intention), then the gift will be regarded as immediate, not subject to any condition precedent, and therefore not within the scope of the rule against perpetuities. The mode pointed out by the testator is only one way, though the preferable way, of carrying out the charitable purpose; and if it cannot, with regard to the general charitable intention, be carried out in that way, *it will be carried out cy pres.* * * * ' Gray, Perpetuities (3d Ed.) § 607." (Emphasis supplied.)

See also Woodruff v. Marsh, 63 Conn. 125, 26 A. 846, 849, 38 Am.St.Rep. 346; Russell v. Allen, 107 U.S. 163, 171, 2 S. Ct. 327, 27 L.Ed. 397; Perry on Trusts, 6th Ed., § 737.

I do not think Williams v. Pearson, 38 Ala. 299; Johns v. Birmingham Trust & Savings Co., 205 Ala. 535, 88 So. 835; or Tarver v. Weaver, 221 Ala. 663, 130 So. 209, principally relied upon by appellees, are precedents to the contrary.

In Williams v. Pearson, the testator provided that upon the death of his daughter without issue (an event unquestionably within the period of the rule against perpetuities), his estate should be converted into money "to be equally divided into two parts; one half of said estate I loan to Pilgrim's Rest Association, to be received by said association, and loaned out by commissioners to be appointed by said association, at eight per cent. *per annum*, and said interest to be equally divided annually between the ministers having charge of churches in said association; and the other half I loan to Vienna and Cochran's Mill Beat; and my will is, that three commissioners be elected by a general vote of the two beats, to receive the money, by their giving good and sufficient security, in double the amount which they may receive, to the judge of the county court of Pickens County; and said commissioners to loan out said money, at eight per cent. interest, and the said interest to be collected annually, and applied by said commissioners to the education and tuition of all the pauper and poor children of said beats, whose parents are not able to support them."

The exigencies of that decision were completely without the scope of the rule against perpetuities, nor was the rule considered. The gift of the remainder was (1) to an *existing association* and (2) to beneficiaries in *two then recognized legal subdivisions of the county.* The essence of the court's holding was that "it is not necessary to their validity that there should be a grantee or devisee capable of taking or holding by law * * *" because "if the object of a charitable donation can be ascertained, the want of a trustee will be supplied by appointment by a court of equity." The case at bar presents an entirely different status. Here the educational association is quite "definitely described," but it might not be formed within the period allowed by the rule. In the present case the gift of future income of future years is manifestly contingent only and not vested and since it might not so vest within twenty-one years, it falls within the ban of the rule.

True, the Williams v. Pearson case did provide for the administration of the fund when received by the association, "by commissioners to be appointed by said association," but this was merely an administrative duty to be performed subsequent to the *vesting* of the gift in the association, namely, after the association received the money. But the right of the existing entity (association) to receive and enjoy the gift was not dependent upon any condition. And, as regards the gift to the two county beats for the poor children in said beats, etc., here again was a gift to an existing body, the court holding that "When this will was executed [July 8, 1848] a *beat* in this state was a well-known legal subdivision of a county, corresponding to the townships or towns in some other States." In each instance there was a vesting of the remainder in a definite entity and had the life estate fallen in at any time there was a beneficiary to take without contingency or conditions. That is not our case.

In Johns v. Birmingham Trust & Savings Co., 205 Ala. 535, 88 So. 835, 836, the

gift was immediate to a trustee for immediate application of the income to existing charitable organizations, commencing with the end of the first year of the trust. Each year, beginning with the first, the trustee was directed to "select an association, organization, society, or corporation, then *existing* and maintaining an institution in Jefferson county, Ala., which cares for, supports, and maintains and educates, where needed, orphan children, indigent persons, and needy old people, * * * indigent, injured, or helpless miners, their wives or children, any, one, or all of them, in the state of Alabama, and shall pay to the association, organization, society or corporation so selected by it the income derived each year from the trust estate, * * *" etc. It was further provided that:

"* * * The said Birmingham Trust & Savings Company, as said trustee, shall have the right to change the beneficiary so selected by it as above directed at the end of any year, but the same beneficiary may be selected from year to year, *and a beneficiary, when once selected, shall remain as such beneficiary until another is selected and designated in its place by said trustee; * * *.*" (Emphasis supplied.)

When the testator died there were such charitable organizations existing in Jefferson County. Under the terms of this will the equitable interest was to vest in one of the existing organizations at the end of the first year, well within the period of the rule. There was no question of remoteness and the only condition was the selection by the trustee which it was required to perform within a period of one year. Once the equitable interest vested in the association selected as the beneficiary, it remained vested in that association until divested by a change of beneficiary from that charity to another charity. Such a change of charitable beneficiaries (without lapse of time between them) is an exception to the rule against perpetuities.

While in the Johns v. Birmingham Trust & Savings Co. Case the interest did not vest at the time of the creation of the trust, the only contingency of the vesting was the selection of the existing association to take the first year's income. The trust was so limited that the trustee must perform this condition within the *first year*, thus vesting the beneficial interest.

Tarver v. Weaver, 221 Ala. 663, 130 So. 209, 211, does not consider any question related to those in the present case. In that case all bequests, upon the death of two living persons (an event within the rule) went direct to *existing charitable organizations for immediate application* to charitable purposes without any conditions or contingencies. There were no prescribed future events or conditions. The court said:

"The suggestion in the bill that the bequest to the Dallas Art League must fail because said league is nonexistent is of little force in the face of the record that it was made a respondent to the bill, has been served with process, and a decree pro confesso has been rendered against it, and that it has appeared by counsel and made motion to set this decree aside."

## Accumulation.

It also seems clear that the provisions of Item Four of the will which commands that the annual excess of income be made a permanent addition to the permanent corpus, never to be spent for any purpose, violates not only our own statute, but the common law, against accumulations.

In Thurlow v. Berry, 247 Ala. 631, 25 So.2d 726, 729, the following observation had the unanimous approval of the court: "Authorities seem to agree that after the ten year limit under § 146, supra [of Title 47, Code], has expired, the accumulations cannot ordinarily be made a permanent addition to the corpus."

The excess thus commanded to be added to the corpus cannot be used for the paying of the individual bequests to collateral kin, since the will stipulates for their payment only out of each year's income, but if the income of any one year is insufficient to pay them all in full, all bequests fail and lapse for that year. The income so

accumulated in prior years cannot be used. The accumulated income cannot be used for any purpose but must remain forever a part of the inviolate corpus. This limitation, therefore, requiring that all excess income be added permanently to the corpus is a trust of estate for the purpose of accumulation only.

The fact that the will creates several trusts independent of each other and each complete in itself, some of which are lawful and others unlawful, and which may be separated from each other, is no impediment to sustaining the valid and avoiding the invalid. The legal ones may stand, while the illegal may be cut off and declared invalid. Lyons v. Bradley, 168 Ala. 505, 53 So. 244.

The several trusts set up were: (1) a trust for the widow, payable from a separate tax-free fund; (2) a trust for the sister, payable similarly; (3) a trust for collateral kin not exceeding $8,600 annually; (4) the main and remaining trust of the entire balance of the income, requiring that each year's excess be added irrevocably and irretrievably to the corpus. This last mentioned trust contains over ninety percent of the estate and the accumulated income, now more than $137,-000 a year, can never be used for any purpose, but must remain forever a part of the inviolate corpus.

There can be no doubt that the testator intended that this trust should be for accumulation only. We need only to quote the following provisions of the will:

"The corpus of the estate should increase, especially with the provision that when any of the bequests mature, either from death of the beneficiary or otherwise, the amount of such beneficiary's bequest shall remain and become a part of the corpus of the estate after each year when the bequests have been paid and all expenses with taxes have been satisfied, that whatever remains from the income of that particular year shall be entered as part of the corpus of the estate and subject to the same treatment thereafter as the original corpus of the estate.

"Item Five

"After said association has been fully formed, the corpus of the estate, including what has been added to the corpus since my death, shall be held intact by the trustee * * *

"Item Six

"* * * The watchword shall be that nothing but the income from the estate must be used from year to year, but sums added to the corpus each year should be striven for."

Not only do the foregoing quotations show an intent to accumulate, but are specific directions for accumulation and the conclusion is manifest that said provision in Item Four is void under our statute against accumulations. Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Campbell v. Weakley, 121 Ala. 64, 25 So. 694; Henderson v. Henderson, 210 Ala. 73, 97 So. 353.

Analogous rationale also establishes that the provisions in the will so limiting the expenditures of income to the particular year, covering all unused annual income into the trust to become a part of the inviolate corpus, violates the common law rule against accumulations. During each year from the testator's death, forever, the trustee is commanded to add all excess annual income irrevocably to the corpus. This violates the common law rule against accumulations.

An unlawful accumulation, as touching the common law rule against perpetuities, is defined as "(1) the withholding, preventing or prohibition of the present enjoyment or present expending of such rent, income, or interest; and (2) the adding of such rent, income, or interest so gathered together over a period of time to the principal of a fund or the capital." In re Hartman's Estate, 126 Misc. 862, 215 N.Y. S. 802, 806.

Our own court, in speaking of the term, stated in Henderson v. Henderson, 210 Ala. 73, 97 So. 353: "'The meaning which the word "accumulation" has in course of time come to have in our law is stated * * * as follows: "The adding of the interest or income of a fund to the principal, pursuant to the provisions of a will or deed pre-

*venting its being expended* * * *"'"
210 Ala. 83, 97 So. 361.

We observe the following explanation of the operation of the rule against accumulations from the following authorities:

"The most explicit provision fitting the description of [an accumulation] exists when a trustee is directed or empowered to reinvest the income of a trust as and when received. Such provision may apply to the whole income of the trust, or to a specified fraction of the income during each year, or to a specified sum out of the income during each year, or to income in excess of current authorized payments therefrom * * *" Restatement, Property, Vol. IV, § 439, p. 2563.

" * * * 'When an executor or other trustee masses the rents, dividends or other income which he receives, treats it as capital, invests it, makes a new capital of the income derived therefrom, invests that, and so on, he is said to accumulate the fund. And the capital and accrued income constitute accumulations * * *'" Hussey v. Sargent, 116 Ky. 513, 75 S.W. 211, 215, quoting Black, Law Dictionary.

"In any case where it is made the duty of the trustee to treat as principal the income of the trust property, instead of distributing in the ordinary course, there is an accumulation * * *

" * * * These trusts for accumulation have always been regarded with disfavor by the law, and the courts at an early day limited the time of accumulations to correspond with the period of the rule against perpetuities, and more recently statutes have been enacted in some jurisdictions still further restricting the exercise of this right, in respect to both the beneficiaries and the period of accumulation." 22 Am. & Eng.Encyc. of Law (2d Ed.), p. 728.

" * * * It is also said, that the act is one of restraining force, and cannot give validity to trusts for accumulation, which are in themselves void, as transgressing the common-law limits of a perpetuity. Thus a direction to accumulate beyond the time allowed by the statute, but within the time allowed by the common law, will be good for the actual time allowed by the statute, and void only for the excess; but a direction to accumulate, beyond the rule of common law against perpetuity, is wholly void notwithstanding the statute. Consequently, in England a trust for accumulation may verge *almost* upon the outside of the limit of a perpetuity, and yet be void only for the excess beyond the time established in the statute; but if a trust for accumulation transcends in the slightest degree the boundary of a perpetuity, it is wholly void, and will fail without regard to the actual course of events." Perry on Trusts, Vol. 1, § 395.

"A provision for accumulation which violates the Rule against Perpetuities is wholly void; but a provision which is good so far as the Rule against Perpetuities is concerned, but violates the Thellusson Act, is void only for the excess. Thus, if there be a direction in a will to accumulate income during the life of A., it can be accumulated for twenty-one years from the testator's death." Gray, The Rule Against Perpetuities, § 687.

"But the Thellusson Act does not render valid, *pro tanto*, a provision for accumulation which violates the Rule against Perpetuities; such provision is bad altogether." Gray, supra, § 688.

The provisions for accumulation are clearly against the letter and spirit of this common law rule.

Finally, I think the costs should be taxed against the estate. Presumably, the theory of the trial court, and sought to be sustained here, is that because in the opinion of the court the plaintiffs, appellants here, did not sustain their position, the court should exercise its discretion in taxing them with the costs. The case, however, is not so simple. The bill was for a construction of the will and a declaration as

264

to the validity of certain provisions thereof. The case raised vital questions necessary of solution and the estate is not and and should not be interested on behalf of any one particular party litigant under a situation as here prevailing, where there were doubtful provisions of the will, and a declaration would benefit all concerned. Evidently, neither the executor and trustee, nor any others but the heirs, would invoke the jurisdiction of the court for a declaration. Some one certainly should have. I think, therefore, the estate should bear the entire costs of the proceeding. Costs were taxed against the estate in the construction of the Woodward will (Thurlow v. Berry, supra), where a minority of the trustees filed a bill and the contest was resolved against the minority. The instant case is even more to be regarded as for the benefit of the entire estate.

On the basis of these considerations, therefore, I respectfully dissent.

I am authorized to say that BROWN, J., concurs in the foregoing.

On Rehearing.

PER CURIAM.

The judgment heretofore rendered is modified so that all the costs which have accrued in this case be taxed against Troy Bank & Trust Company, as trustee.

All the Justices, except GOODWYN, J., not sitting, agree to such modification.

As modified, the application for rehearing is overruled.

LIVINGSTON, C. J., and FOSTER, LAWSON and STAKELY, JJ., concur.

BROWN and SIMPSON, JJ., dissent and think the rehearing should be granted.

LAWSON, J., expresses his reasons for concurring in the result as follows:

LAWSON, Justice.

The application for rehearing in this cause has been pending for a long time. In a large measure, I am responsible for the delay. No injury could result to the parties because of the delay, since the period for the payment of the bequests to the individuals named in the will has not expired.

It is unusual for counsel to entertain the idea that every member of the court should write his own views in every case. Of course, that is not the practice of this or any other appellate court. The nature and volume of the work does not permit such treatment of each case. But the brief filed by counsel for appellants in support of their application for rehearing is an unusual one in other respects. I will not attempt to characterize it or comment further on the tenor of the brief, as copies of it have been widely circulated among the bench and bar.

Because of the general tenor of the brief and the fact that it has been so circulated, I decided to respond to the application for rehearing and during the long period in which the application has been pending here, I have worked on it from time to time as my other duties on the court would permit.

On the first appeal, we upheld the validity of the trust provisions of the will there under attack. Henderson v. Troy Bank & Trust Co., 250 Ala. 456, 34 So.2d 835. All of the Justices concurred.

On the original submission of this appeal, I based my conclusion that the so-called school trust did not violate the rule against perpetuities on the opinion written on the first appeal.

In the early case of Williams v. Pearson, 38 Ala. 299, Justice WALKER, writing for the court, observed: "Few questions have been the subject of more laborious investigation, or given rise to greater conflict of opinion, than that which relates to the origin of the peculiar jurisdiction of equity in respect to charities." With the passing years, the growth of decisional law on the subject, and legislative enactments in some of the states, all aspects of the problem have become more complex and difficult when the cases from other jurisdictions are considered.

After following the trail blazed and charted by counsel to practically all parts of the English-speaking world, I have re

turned to the opinion in Williams v. Pearson, supra, for the pronouncement of certain principles which, in my opinion, bear heavily on some of the questions presented in this case.

Before quoting from the opinion in that case, I think it advisable to state the facts out of which that litigation arose, as well as the questions presented for decision.

Zealous Taylor died in February, 1851, having executed and published his last will and testament, which was dated the 8th day of July, 1848, and duly admitted to probate after his death. By the first clause of his will, the testator directed his debts to be paid. The second, third, fourth and fifth clauses gave several specific legacies. The sixth and seventh clauses were in the following words:

"Item sixth. And the residue of my property, both real and personal, I will and bequeath to my beloved daughter, Sally Ann Taylor, and the begotten heir or heirs of her body; consisting of between six and seven hundred acres of land, adjoining the tract on which I live, besides the dower in Matthew Taylor's land, together with thirteen negroes, namely, (specifying their names) together with their increase. It is my will, that the balance of my estate be sold, on a credit of twelve months, and the proceeds, after paying my just debts, to go to my daughter, Sally Ann Taylor, except my two best beds, bedsteads, and furniture, and all my made bed-covers, her mother's saddle, all my trunks and books, which are to be exempt from sale, and to be well taken care of for my daughter.

"Item seventh. I do hereby constitute and appoint my friends and neighbors, Vincent Bunting and Joel E. Pearson, the executors of this my last will and testament; and it is my will, that they make no return of my estate until it is ready for final settlement, and that the inventory, account of sales, and the account-current of my estate, be returned at the same time (final settlement), so that all the papers may be found together; and it is my will, that my executors settle my estate as soon as the nature of the case will admit of; and, on final settlement of my estate by my executors with the court, my will is, that my friend Vincent Bunting take the guardianship of my daughter, Sally Ann Taylor, and the care of her property; and that her guardian and Joel E. Pearson, and their wives, take charge of my daughter; and my will is, that she remain at Joel E. Pearson's, and be sent to school with his daughters, and be treated as his own daughters, and for him to be paid whatever is right for her board, clothing, and medical aid; that Mrs. Pearson take one of her beds and half her bedclothes, and Mrs. Bunting take the other half, etc. It is my will for her to have a good education as her property will admit of; and that her guardian hire out her negroes, publicly or privately, as he may see proper, and for them not to be hired out on the west side of the river, nor in the prairies any where, as I want good care taken of them, and want them well clothed, shod, and good bedclothes procured for them. Also, I want my lands, orchards, and grove taken good care of, as I want all the above to be beneficial to my daughter when she is in a situation to receive them. And if she should die without a surviving heir or heirs of her body, my will is, that all her property shall be sold, on a credit of one, two, and three years installments, and all her estate to be equally divided into two parts; one half of said estate I loan to Pilgrim's Rest Association, to be received by said association, and loaned out by commissioners to be appointed by said association, at eight per cent. per annum, and said interest to be equally divided annually between the ministers having charge of churches in said association; *and the other half I loan to Vienna and Cochran's Mill Beat; and my will is, that three commissioners be elected by a general vote of the two beats, to receive the money, by their giving good and sufficient security, in double the amount which they may receive, to the judge of the county court of Pickens county; and said com-*

*missioners to loan out said money, at eight per cent. interest, and the said interest to be collected annually, and applied by said commissioners to the education and tuition of all the pauper and poor children of said beats, whose parents are not able to support them."* (Emphasis supplied.)

Both of the executors named in the will qualified and took on themselves the execution of the trust. On the 30th day of June, 1853, Bunting made a final settlement, resigned his office of executor, and renounced the guardianship of Sally Ann Taylor. At the same time Pearson made a partial settlement, giving a new bond, and qualified as sole executor and also qualified as guardian of Sally Ann Taylor.

In October, 1857, Sally Ann Taylor died intestate, unmarried, and under the age of twenty-one years. On the 11th day of January, 1858, Pearson made a final settlement of his gardianship of her estate. On the 24th day of December, 1859, letters of administration on the estate of Sally Ann Taylor were granted to Mrs. Dicey Williams. An examination of the original transcript shows that Mrs. Dicey Williams was the sister of Zealous Taylor, the testator, and an aunt of Sally Ann Taylor.

Thereafter, on April 28, 1860, Mrs. Dicey Williams filed a bill in equity in the chancery court of Pickens County against Joel E. Pearson as the guardian of Sally Ann Taylor, deceased, and as the executor of Zealous Taylor, deceased, wherein the complainant sought an account and settlement of all of Pearson's acts as executor and guardian, insisting that the settlement of his guardianship was void because no administrator of the ward's estate had been appointed and that the bequests to charitable uses, contained in the seventh clause of the testator's will, were invalid.

The chancellor held, on demurrer, that the executory bequests were valid and included all the property devised and bequeathed to Sally Ann Taylor, with the rents, income and profits therefrom remaining undisposed of at her death; and, consequently, that the complainant had no interest which she could assert by bill. The

bill was dismissed. From that decree the complainant, Mrs. Dicey Williams, appealed to this court.

This court upheld the validity of the bequests to charitable uses, but reversed the decree appealed from so far as it held that the charitable bequests embraced not only the corpus of the property devised to the daughter, but also all the rents, profits and income thereof left undisposed of by her at her death.

The opinion shows that it was not denied by the parties to the appeal that, according to the law of charitable uses, as administered in the English court of chancery, the executory bequests contained in the seventh item of the will would be upheld.

The contention of appellants as to the invalidity of the charitable bequests is set out in the opinion in the following language, 38 Ala. at page 303:

"* * * But it is insisted, that the authority of the English court of chancery, in regard to donations to charitable uses, so far as it differs from the power exercised in other cases of trust, is either derived from the statute of 43d Elizabeth, ch. 4, known as the 'statute of charitable uses,' or belongs to the chancellor as a branch of the prerogative power of the king; and that apart from the prerogative power with which the chancellor is clothed, and independently of the statute of Elizabeth, the jurisdiction of the court of chancery, over bequests and trusts for charity, is precisely the same as over bequests and trusts for other lawful purposes, and must be exercised upon the same principles, and by the same rules. It is further insisted, that the statute of 43d Elizabeth is not in force here; and that this being so, and inasmuch as our chancery courts are not clothed with the prerogatives of the crown, and exercise no other than judicial power, it follows, that the English law of charitable uses, so far as it differs from the law governing bequests and trusts for other lawful purposes, cannot be recognized by our courts * * *"

The writer of the opinion then observed, 38 Ala. at pages 303–304:

"* * * If these propositions can be maintained, it results, that the validity of these bequests must depend upon the principles applicable to bequests and trusts in general, and not upon the peculiar doctrines which prevail in England in regard to charitable donations, as distinguished from gifts for other purposes; and consequently, if the bequests would have been void, had their purposes not been charitable, the fact that their purposes are charitable does not make them valid."

The writer of the opinion then proceeds to recognize the conflict of authorities, pointing out that many eminent jurists sustain the view contended for by counsel for appellant. Among the cases cited as supporting that view is the case of Owens v. Missionary Society, 14 N.Y. 380.

It is then pointed out that "another class of jurists maintain, that the English law of charitable uses does not derive its origin from the statute of the 43d Elizabeth, nor depend upon it; but that at a remote period in English judicial history it was engrafted upon the common law, its general maxims being derived from the civil law; that the statute of Elizabeth introduced no new principle, but was designed to afford a new and less dilatory mode of establishing charitable donations, which were understood to be valid by the laws antecedently in force; and that, independently of the statute of Elizabeth, and apart from the royal prerogative, there is an inherent jurisdiction in equity to establish and enforce devises and grants to charities, which, but for the charitable feature, would be void." 38 Ala. at pages 304–305.

This court refused to follow what I shall call the New York rule. So it may be well to observe at this point that I see no occasion to discuss the early New York cases pressed upon us by counsel for appellants, or cases from other jurisdictions holding to like effect.

I have heretofore shown what the New York rule was and that it was not followed by this court in Williams v. Pearson, supra, appears from the following language in the opinion, 38 Ala. at page 305:

"Our investigation of the cases has satisfied us, that the current of American authorities is in favor of the doctrine, that trusts for charitable uses are favored by courts of equity, and that, independent of the statute of Elizabeth, and of the prerogative power, there is an original and inherent jurisdiction in those courts to sustain, on account of their charitable purposes, trusts which, but for their charitable feature, would be held void. (Authorities cited)."

The writer of the opinion in Williams v. Pearson, supra, then proceeded to state what I shall call the Alabama rule, 38 Ala. at pages 306–307:

"In Carter v. Balfour's Adm'r (19 Ala. 814,) this court, after a careful examination of the subject, gave its sanction to the doctrine just stated. In that case, the bequests, which were to certain unincorporated charitable societies, were plainly void, upon the principles applicable to ordinary bequests and trusts. (Authorities cited.) But it was held, that being charitable bequests, a court of equity could give them effect by virtue of its common-law and judicial powers, without claim to any prerogative power, and without invoking the aid of the statute of 43d Elizabeth. A decision, thus deliberately made, upon a question involved in so much doubt and obscurity, and upon which so much may be said on both sides, we are not disposed to disturb. Without intimating, therefore, what our opinion would be if uncontrolled by any former adjudication, *we content ourselves with saying, that it must be regarded as the settled law of this State, that charitable donations are so far exempted from the rules applicable to other trusts, that it is not necessary to their validity that there should be a grantee or devisee capable of taking or holding by law, or that there should be a cestui que trust so definitely described as to enable a court of equity to execute the trust upon its*

*ordinary principles. Such we under-
stand to be the doctrine to be deduced
from the case of Carter v. Balfour's
Adm'r, supra, and the other authori-
ties above cited."* (Emphasis supplied.)

That the power of a court of equity of
this state to uphold the validity of chari-
table bequests of the kind above described
is not based on the so-called prerogative
power or the cy pres power clearly appears
from the following language in the opinion,
38 Ala. at pages 307–308:

"It will be perceived, that we do not
recognize the whole of the English doc-
trine of charities as in force here. A
considerable portion of it is not adapted
to our political condition, and has been
rejected by our courts. In England,
whenever anything is given to charity,
and no charity appointed,—that is to
say, where the testator declares his in-
tention in favor of charity indefinitely,
without any specification of objects;
or where the charity which is appointed
is superstitious, the power of appoint-
ment vests in the king as pater patriae,
and is exercised by him through the
chancellor. (Authority cited) So,
likewise, when a definite object of
charity is specified, which fails, or be-
comes impracticable, so that the fund
cannot be applied to the charity intend-
ed by the testator, the court will, under
the doctrine of cy-pres, apply it to
some kindred or analogous object of
charity. The power exercised by the
English court of chancery, in the two
classes of cases just mentioned, is not
judicial power, and does not belong to
our courts. (Authorities cited) But,
the cy-pres doctrine and the preroga-
tive power to carry out indefinite chari-
ties being excepted, the law of chari-
ties, as administered in the English
court of chancery, is substantially our
law.

*"Accordingly, when an ascertainable
object, recognized as charity, is desig-
nated by the donor, in general or col-
lective terms,—as the poor of a given
county or parish, or the clergymen
of a particular denomination having
charge of churches within a specified*

*district, the gift or legacy will be up-
held by a court of equity. Nor is it
any objection to the validity of such a
gift, that the donor has appointed no
trustee, or that the trustee appointed is
incapable of taking the legal interest.
If the object of a charitable donation
can be ascertained, the want of a trus-
tee will be supplied by appointment by
a court of equity.* (Authorities cited)"
(Emphasis supplied.)

At this point I wish to state again that
I fully recognize that the holding in Wil-
liams v. Pearson, supra, is clear to the effect
that the prerogative power and the cy pres
power, as those powers are defined in the
opinion, are not possessed by the chancery
courts of this state.

But the fact remains that this court
recognized that the courts of equity of this
state possess a power, not labeled or named,
to carry out the charitable bequests of a
will when an ascertainable object, recog-
nized as charity, is designated by the donor,
in general or collective terms, as the poor
in a given county or parish, or the clergy-
men of a particular denomination having
charge of churches within a specified dis-
trict; and in the exercise of that power,
if the object of the charitable donation can
be ascertained, the want of a trustee will
be supplied by appointment of the equity
court.

Having determined that such power was
vested in a court of equity and that such
power was not the prerogative or cy pres
power, the court was then confronted with
the question as to whether or not the bene-
ficiaries of the charitable bequests con-
tained in Item Seventh of the will were so
designated by the donor that the power
could be exercised. On that point the opin-
ion in Williams v. Pearson, supra, reads,
38 Ala. at page 308:

"In both of the bequests under con-
sideration, the objects of the testator's
bounty are so designated that they may
be readily found. It is plainly to be
inferred from the language used, that
'Pilgrim's Rest Association' is a society
which extends over a particular sec-
tion of country; and the fund is 'to be
equally divided annually between the

ministers having charge of churches in said association.' *In the other bequest, the beneficiaries named are 'all the pauper and poor children' of two designated beats, 'whose parents are not able to support them.'* When this will was executed, a beat in this State was a well-known legal subdivision of a county, corresponding to the townships or towns in some other States. *It is clear, upon the principles above laid down, and also according to the adjudged cases, that, in both instances, the testator's designation of the objects of his bounty is sufficiently specific, and that the bequests are valid.* (Authorities cited)" (Emphasis supplied.)

My understanding of the holding in Williams v. Pearson, supra, is as follows:

1. Alabama does not follow the rule of the early New York cases and cases from other states to the effect that the jurisdiction possessed by chancery courts over charitable trusts is limited to that which is exercised in England over trusts in general, when the state chancery courts are not endowed with any portion of the prerogative power and where the statute of Elizabeth is not in force.

2. Chancery courts in Alabama do not possess the so-called prerogative power—that is, where the testator declares his intention in favor of charity indefinitely without any specification of objects, or where the charity which is designated is suspicious, the power of appointment vests in the king as pater patriae, which he exercises through his chancellor.

3. Chancery courts in Alabama do not possess the so-called cy pres power—that is, when a *definite object* of charity is specified, which fails or becomes impracticable, so that the bequest cannot be applied to the charity intended by the testator, the chancery court has the power to apply the bequest to some kindred or analogous object of charity.

4. With the exception of the prerogative power and the cy pres power as those powers are defined and explained in the opinion, the law of charities as administered in the English court of chancery is substantially our law.

5. That aside from the prerogative power and the cy pres power, and independent of the statute of Elizabeth, there is an original and inherent jurisdiction in the chancery courts of this state to sustain, on account of their charitable purposes, trusts which, but for the charitable feature, would be held void.

6. While this jurisdiction or power is definitely recognized, no attempt is made to define it or give it a specific name. It seems to have been considered as a part of the original and inherent jurisdiction of the English chancery courts.

7. In Alabama, charitable donations are so far exempted from the rules applicable to other trusts that it is not necessary to their validity that there should be a grantee or devisee capable of taking or holding by law, or that there should be a cestui que trust so definitely described as to enable a court of equity to execute the trust upon its ordinary principles.

8. When an ascertainable object, recognized as charity, is designated by the donor in general or collective terms, the gift or legacy will be upheld by a court of equity in this state.

9. A bequest is valid which is in the following language: "* * * and the other half I loan to Vienna and Cochran's Mill Beat; and my will is, that three commissioners be elected by a general vote of the two beats, to receive the money, by their giving good and sufficient security, in double the amount which they may receive, to the judge of the county court of Pickens county; and said commissioners to loan out said money, at eight per cent. interest, and the said interest to be collected annually, and applied by said commissioners to the education and tuition of all the pauper and poor children of said beats, whose parents are not able to support them."

10. Although the language used by the testator was that he loaned the money to the two beats, the beneficiaries were all the pauper and poor children of the two beats whose parents were not able to support them.

11. Such bequest was valid although the testator stated it to be his "will" (1) that three commissioners be elected by a general vote of the two beats to receive the money; (2) that the commissioners so elected give good and sufficient security; (3) that the commissioners so elected loan out the money at eight per cent to be collected annually,—matters that a court of equity could not enforce in accordance with the "will" of the testator.

The principles announced in Williams v. Pearson, supra, in 1862 were, in my opinion, the law of this state in 1937 when Governor Henderson died.

In Johnson v. Holifield, 79 Ala. 423, the principles announced in Williams v. Pearson, supra, were reaffirmed, but the bequest was held invalid on the ground that "the bequest under consideration possesses none of the elements of a charitable use."

The holding of the majority of the Justices in Crim v. Williamson, 180 Ala. 179, 60 So. 293, does not, in my opinion, reflect in any way upon the principles laid down in Williams v. Pearson, supra. The bequest held to be invalid gave to the trustees "an unbridled discretion to devote the fund to 'worthy objects of charity,' thus vesting in them the sole power to determine who or what may be worthy objects of charity and without restriction or limitation as to individual, class, condition, or location."

This is certainly not in conflict with the holding in Williams v. Pearson, supra, to the effect that a bequest is valid where the objects of the testator's bounty are so designated that they may be readily found and that when an ascertainable object, recognized as charity, is designated by the donor, in general or collective terms, the gift or legacy will be upheld by a court of equity.

The distinction between the two cases is pointed out by Justice SAYRE in the case of Johns v. Birmingham Trust & Savings Co., 205 Ala. 535, 88 So. 835, where the principles enunciated in Williams v. Pearson, supra, were not only reaffirmed, but applied. I point out that Justice SAYRE concurred in the holding of the majority in Crim v. Williamson, supra.

The holding in King v. Banks, 220 Ala. 274, 124 So. 871, is not in conflict with the principles announced in Williams v. Pearson. In the King case the grantee in the deed was a definite object of charity, a Methodist school, which had failed, and under the rule announced in Williams v. Pearson, our equity courts not possessing the cy pres power, the use of the property could not be diverted to the public schools, a use not contemplated by the settlors of the trust.

In the opinion written on the first appeal, we upheld the school trust as against the contention that the rule against the perpetuities was violated, on the following constructions placed on the will:

1. The beneficiary of the school trust is not the "Charles Henderson Educational Association," but "the part of the public to be benefited."

2. The equitable estate vested in "the part of the public to be benefited" immediately upon the death of the testator.

As going to show that we were in error in so construing the will, it is stated in brief of appellants:

"In dealing with the rule against perpetuities every intendment must be indulged against the possibility of vesting—that is, to defeat, not to uphold, the intention of the testator. That is the reason why so many errors are committed in dealing with the rule against perpetuities; because, as Mr. Gray says in his preface, 'the reasoning is unlike that with which lawyers are most familiar.'

"'The rule against perpetuities is *not a rule of construction but a peremptory command of law.* It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to *defeat* intention. Therefore every provision in the will or instrument is to be construed *as if the rule did not exist,* and then to the provision so construed the rule is to be *remorselessly applied.'* Gray, Section 629."

I do not understand it to be the law of this state that "in dealing with the rule

against perpetuities every intendment must be indulged against the possibility of vesting—that is, to defeat, not to uphold, the intention of the testator." In Edwards v. Bibb, 43 Ala. 666, 668–672, wherein the rule against perpetuities was directly involved, it was said:

"In the construction of wills, very great indulgence is allowed in order to sustain and carry out the intention of the testator, if that intention does not violate the policy of the law * * *
* * * * * *

"But it is said, that the legal intent of the testator must be ascertained from the proper legal construction of the language he has used to indicate his intent. And in this case the language used imports an illegal intent. That by the use of the words 'male issue,' or the word 'issue,' without any words limiting this expression to the issue living at the death of said Thomas Bibb, a perpetuity is intended, which is illegal; because such issue might not fail for many generations after the death of Thomas Bibb, the first taker of the estate under the devise; and this would be too remote a postponement of the estate intended to be given to Porter Bibb. The law requires that the estate intended to be given to Porter Bibb must vest in twenty-one years and the fraction of a year, sufficient to cover the birth of a posthumous child, after the death of Thomas Bibb, or the behest is invalid. 4 Kent. 267, 271, marg.

"The word 'issue' may have this very general meaning, or it may have a more limited one. It may mean children of the first taker, or it may mean issue living at his death. 6 Bac.Abr., Bouv. 147; 7 Ves. 522; 3 Ves. & B. 67. *If the testator used it in either of these imports, it is the duty of the court so to construe it.* The construction of words in a will is much less technical than the use of the same words in a deed. In the will, such technical import may be altogether disregarded, if they were not used by the testator in a technical sense. Wills are the least technical of all legal instruments for the conveyance of estates. Each will must stand or fall upon its own facts * * *" (Emphasis supplied.)

In Henderson v. Henderson, 210 Ala. 73, 97 So. 353, wherein the rule against perpetuities was directly involved, it was said: "It will be further noted that the rules of law favor the vesting of estates, for the reason that estates should become absolute at the earliest moment, and doubtful or obscure clauses have been so construed as to aid such instruments."

In numerous cases we have said the law favors the construction by which the estate is vested rather than defeat it, and that the intent to postpone vesting must be clear and not arise from mere conjecture.

In St. Louis Union Trust Co. v. Bassett, 337 Mo. 604, 621, 85 S.W.2d 569, 578, 101 A.L.R. 1266, it was said: "The rule against perpetuities is not a rule of construction, but a rule of property, yet 'if there are two possible constructions of a testament, one which would permit effect being given to the whole will and the other which would result' in defeating the will, 'preference will be accorded to the construction which will uphold the will.'"

In Warren v. Duval, 124 Conn. 448, 200 A. 804, the rule is thus stated: "Where two modes of construction are fairly open, one of which will turn a bequest into an illegal perpetuity while by following the other the bequest would be valid, the latter mode must be preferred."

To like effect see Jenson v. Nelson, 236 Iowa 569, 19 N.W.2d 596; Goodloe's Trustee & Adm'r v. Goodloe, 292 Ky. 494, 166 S.W.2d 836; Jewett v. Harvie, 183 Va. 734, 33 S.E.2d 213; In re Olmstead's Will, 131 Misc. 238, 226 N.Y.S. 637; Klingman v. Gilbert, 90 Kan. 545, 135 P. 682; In re James' Estate, 245 Pa. 118, 91 A. 511; Bratton v. Graham, 146 Miss. 246, 111 So. 353; In re Phelps' Estate, 182 Cal. 752, 190 P. 17; Taylor v. Crosson, 11 Del.Ch. 145, 98 A. 375; Closset v. Burtchaell, 112 Or. 585, 230 P. 554; In re Peck's Estate, 96 Vt. 183, 118 A. 527; Reese v. Reese, 190 Md. 311, 58 A.2d 643.

There is another rule of construction long recognized in this state which is to the effect that the law presumes that when a testator undertakes to make a will disposing of all of his property, he did not intend to die intestate as to any of it or during any period of time. Roberts v. Cleveland, 222 Ala. 256, 132 So. 314.

But the cardinal rule in the interpretation of wills, to which all other rules must bend, is that the intention of the testator shall prevail, provided it is consistent with the rules of law. O'Connell v. O'Connell, 196 Ala. 224, 72 So. 81. Each will presents its own inquiry, in which testator's intention controls. Meglemry v. Meglemry, 222 Ala. 229, 131 So. 906.

In Castleberry v. Stringer, 176 Ala. 250, 255, 57 So. 849, 850, it was said: "'In endeavoring to construe a will so as to ascertain the intention of the testator, the courts will put themselves as far as possible in the position of the testator by taking in consideration his modes of thought and the circumstances surrounding him at the time of the execution of the will. Thus courts will consider the condition of his family and estate, the comparative amounts of realty and personalty, his affection for the legatees, his social relations,' etc."

It is said in brief: "The upholding of a direction to pay to an association not in existence and which by possibility may not be formed, if ever, within the period of the rule against perpetuities, is an application of the cy pres doctrine."

If the will is construed as showing that the "Charles Henderson Educational Association" is the beneficiary of the school trust, then I agree with the statement above quoted.

But I do not think the will should be so construed. The Association, under the terms of the will, is not to perform functions similar to a hospital, college or like eleemosynary institution. Its functions are purely administrative.

· The word "gift" is not used in connection with the school trust. Testator did provide that after the Association is formed the trustee "pay" to it the income of the estate from time to time as needed. But this provision to pay to the Association does not require a construction that the Association is the beneficiary of the school trust. The case of Thomas v. Bryant, 185 Va. 845, 40 S.E.2d 487, 169 A.L.R. 257, cited and quoted from in the opinion on first appeal, seems to me to be directly in point. And in Williams v. Pearson, supra, the language used by the testator was "and the other half I loan to Vienna and Cochran's Mill Beat; and my will is, that three commissioners be elected by a general vote of the two beats, to receive the money, by their giving good and sufficient security, in double the amount which they may receive, to the judge of the county court of Pickens county; and said commissioners to loan out said money, at eight per cent. interest, and the said interest to be collected annually, and applied by said commissioners to the education and tuition of all the pauper and poor children of said beats, whose parents are not able to support them." Although, as shown above, the testator stated that he loaned the money to the two beats and that it should be received by the commissioners to be elected, the court did not hold that the beats or the commissioners were the beneficiaries of the trust.

The conclusion reached in the opinion written on the first appeal to the effect that the beneficiary of the school trust is "the part of the public to be benefited" is, in my opinion, correct. Perhaps it might have been said that the beneficiaries are "the school children of Pike County." I realize the fact that cases from some other states are not in accord with this view, but the construction is fully in accord with that reached by the Virginia court in Thomas v. Bryant, supra, and by this court in Williams v. Pearson, supra.

But appellants say that even if the will is subject to the construction that testator intended that the school children of Pike County be the beneficiaries of the school trust, the equitable estate did not vest in them immediately upon the death of testator, as was held in the opinion written on first appeal.

The fact that testator provided that his trustee pay the income of the estate to the Association after it is formed is not incon-

sistent with the construction that the equitable estate vested in the beneficiary at time of testator's death. Thomas v. Bryant, supra; Williams v. Pearson, supra; Curtis v. Maryland Baptist Union Association, 176 Md. 430, 5 A.2d 836, 121 A.L.R. 1516; Gilmore v. Gilmore, 197 Ga. 303, 29 S.E. 2d 74. The case of Thomas v. Bryant, supra, is fully treated in the opinion written on first appeal and I have heretofore quoted at length from Williams v. Pearson, supra.

The case of Maryland Baptist Union Association, supra, was decided in April, 1939, before the legislature of Maryland had conferred cy pres power upon the equity courts of that state. See Article 16, § 295, Annotated Code of Maryland 1951, the provisions of which became effective in 1945.

The provisions of the will necessary to an understanding of the holding of the Maryland court are as follows:

"Fifth, I hereby instruct my executor to put in trust all bonds and cash in bank of which I may die seized and possessed, the annual income from same to be divided equally between my brother, Charles Hall, and sister, Laura Wimbrow, as long as they live, and at the death of either, the survivor to enjoy the whole income for the remainder of his or her life, at which time provision is hereinafter devised.

"Sixth, I give to the Maryland Baptist Union Association, after the death of my brother and sister, as set forth in the preceding item, the bonds and money which are left in trust, provided they will raise within twelve months a like amount to build an Orphan's Home somewhere in the State of Maryland; but if they do not raise an amount to equal the amount in trust in twelve months, I instruct that this amount be left in trust until the income added to the principal shall make a like amount, thus doubling the principal, at which time I give to the said Maryland Baptist Union Association to enjoy absolutely, for the purpose of building an Orphan's home in the State of Maryland." (176 Md. 430, 5 A.2d 838, 121 A.L.R. 1520)

It was held:

"The rule against perpetuities is directed against the vesting of interests at a future date and has no application to interests which are already vested. Miller, Construction of Wills, Sec. 322. And the word 'vest' as used in the law of property 'signifies the fixation of a present right to the immediate or future enjoyment of property'. Safe Deposit & Trust Co. v. Sheehan, 169 Md. 93, 107, 179 A. 536, 543. The law favors the early vesting of estates, and as a general rule Courts will when there is more than one period mentioned adopt the earlier one, unless this contravenes the intent of the testator or donor as revealed by the terms of the instrument. Miller, Construction of Wills, Sec. 226. The general principle is that 'any devise or bequest in favor of a person or persons in esse, whether such persons be individualized or treated as a class, confers an immediately vested interest upon the death of the testator, although the time of possession or enjoyment may be postponed, unless there be some clearly expressed desire or some manifest reason for suspending or deferring the time of vesting.' Ibid., Sec. 227.

"Maryland Baptist Union Association did not, in accordance with the terms of the sixth item of testator's will, raise within twelve months a like sum to build an Orphans' Home in Maryland, and it is argued from this that the trust may during the period of accumulation continue for such time as to violate the rule. But it is not the duration of the trust that determines whether the will is violated. Miller, Construction of Wills, Sec. 326; Turner v. Safe Deposit & Trust Co., 148 Md. 371, 129 A. 294.

"No provision appears in the will to indicate that the intention of the testator was to postpone vesting the estate in Maryland Baptist Union Association, and this being true, it would seem that under the settled rules of construction, to which reference has been made, that the Association's

274

right to receive the benefits of the bequest vested at the death of the testator, the enjoyment being postponed during the lives of the life tenants and, as it develops, during the period of accumulation. This view certainly does no violence to the language used by the testator. Cole v. Safe Deposit & Trust Co., 143 Md. 90, 94, 121 A. 911. See also subsection (a) to note 89, 48 C.J., page 990; Tayloe v. Mosher, 29 Md. 443, 451; Buck v. Lantz, 49 Md. 439, 445.

"We are therefore of the opinion that assuming the Maryland Baptist Union Association had power to take the bequest the Chancellor was correct in holding that the rule against perpetuities had no application to the bequest under consideration, because the same vested at the time of testator's death." ( [176 Md. 430, 5 A.2d 840,] 121 A.L.R. 1522–1523).

In Gilmore v. Gilmore, supra, the Supreme Court of Georgia said, 29 S.E.2d 81:

" 'At the death of my wife my said estate I give * * *,' etc., was just another way of naming the recipients of the remainder interest in his estate at the termination of the life estate in the widow. This conclusion is reached not by a construction of these words alone, but from a consideration of the whole will. The law presumes that words of postponement relate to the enjoyment of remainder rather than to the vesting thereof, and the intent to postpone the vesting of the estate must be clear and manifest. The general rule is that where a testator creates a particular estate, and then goes on to dispose of the ulterior interest, expressly, in an event which will determine the entire estate, the words descriptive of such event, occurring in the latter devise, will be construed as referring merely to the period of the determination of the possession or enjoyment under the prior gift, and not as designed to postpone the vesting.' 33 Am.Jur., Life Estates, Remainders, etc., § 109."

Based on their construction of the will that the gift was to "Charles Henderson Educational Association," counsel for appellants state:

"Where property is devised to a trustee upon a use, in the first instance, for the benefit of private individuals, and upon a remote contingency for charity, the Rule against Perpetuities has perfect application, though there be no change of trustee; and even where cy pres is recognized, it cannot be applied where there is such a prior use."

I do not agree with the construction which counsel places on the will in regard to the beneficiary of the school trust. Hence, I do not think the principle above quoted has application here to prevent the vesting of the equitable estate upon the death of testator. Thomas v. Bryant, supra.

As against the holding that the equitable title vested immediately upon the death of the testator in "that part of the public to be benefited," which I have construed to be the school children of Pike County, counsel for appellants say in brief:

"Who are the 'public' to be benefited? Are they the school children who will be of school age (between the ages of 7 and 16 according to law) at the remote time when a building might be built? Did the equitable title vest in those children on January 7, 1937? Hardly. They were not in existence; and if they had been in existence at that time, then by simple arithmetic they will be well beyond the school age before a building can be built.

"You cannot vest a title in the public. There must be someone or some entity capable of taking the equitable title before it can vest."

For my answer to this assertion, I quote from the opinion prepared for the court by Mr. Justice SAYRE in Johns v. Birmingham Trust & Savings Co., 205 Ala. 535, 537, 88 So. 835, 836:

" * * * And this court, by way of illustration, has said that a gift to

the poor of a given county or parish, or the clergymen of a particular denomination having charge of churches within a specified district, will be upheld in a court of equity. Williams v. Pearson, 38 Ala. 299. And it has been repeatedly held that a charitable trust will not fail on account of any uncertainty as to the ultimate beneficiaries, within a properly designated class, if there is a competent trustee to make a selection and thereby render certain the beneficiaries who are to enjoy the bounty provided by the trust. 5 R.C.L. p. 347, § 82; Hadley v. Forsee, supra, 203 Mo. 418, 101 S.W. 59, 14 L.R.A.,N.S., 117. Recurring now to the provisions of this trust, we are constrained to hold that it should be upheld. This conclusion in no wise depends upon the cy pres doctrine, which does not obtain in this state. Nor do we think it should be affected by the decision in Crim v. Williamson, 180 Ala. 179, 60 So. 293. That was an obviously different case."

I refer again to Williams v. Pearson, supra, cited with approval in Johns v. Birmingham Trust & Savings Co., supra. As before shown, Zealous Taylor executed his will in July, 1848, and died in February, 1851. Under the terms of his will he left the residue of his estate to his daughter and the begotten heir or heirs of her body, and provided that as to such residue if his daughter should die without a surviving heir or heirs of her body, the residue should be sold and converted into money, which should be divided into two parts and used for the charitable purposes indicated. The daughter died in October, 1857, unmarried. Her death was six years after that of her father but her early demise was, of course, unseen by the testator. As before shown, the charitable bequests, one of which was construed as being to "all the pauper and poor children" of two designated beats "whose parents are not able to support them," for the education and tuition of such children. No specific children were indicated. But as before shown, this court said: "It is clear,

upon the principles above laid down, and also according to the adjudged cases, that, in both instances, the testator's designation of the objects of his bounty is sufficiently specific, and that the bequests are valid."

I have heretofore shown that I do not construe the will as showing that it was testator's intention that the Association be formed before the equitable interest vest. Nor do I think the provisions as to the acquisition of the land upon which the school buildings are to be constructed and that such land be free of encumbrance and the places where the buildings are to be constructed should be construed as invalidating the school trust. The charitable bequests considered in Williams v. Pearson were upheld in spite of the fact that the testator provided that two commissioners should be elected from the two beats, who should receive the money. There was no way to force such an election. Likewise, there was no way to require the execution of the bond which testator stated it was his "will" that the commissioners execute. Nor could it be said with certainty that the commissioners could lend out the money at eight per cent interest.

Counsel for appellants devote a considerable part of their brief on application for rehearing in support of the argument that the equitable interest in the school trust could not vest immediately upon the death of the testator because the interest of the charity is not a remainder, but a springing use and, therefore, cannot be called vested. This assertion is based on the following construction placed on the will: "The prior estates might terminate at any time by the death of the individuals, but the termination of the prior estate would not *eo instante* convert the ulterior estate into a present interest." Counsel argue: "It is a springing use, because it is limited to be enjoyed upon the happening of events entirely independent of the expiration of the prior interest. There is a possibility of a gap. In fact there is the certainty of a gap."

Counsel have written a very learned treatise on the law of future interests and have cited eminent text writers on the sub-

ject. Counsel cite no case. My research has disclosed no case where the question has been expressly considered in a case bearing any similarity to the one at hand.

However, the case of Curtis v. Maryland Baptist Union Association, supra, [176 Md. 430, 5 A.2d 840] was one where there was a definite gap between the death of the survivor of the individual beneficiaries and the time when the trust funds would be available to the designated charity. Yet the Maryland court held that the Association's right to receive the benefits of the charitable bequest vested at the death of the testator, the enjoyment being postponed during the lives of the life tenants "and, as it develops, during the period of accumulation."

I recognize the fact that the Association might not be formed. The court cannot require its formation. There are matters about which the testator expressed his desire in regard to the location and construction of the school buildings which I think I must assume might not be met.

Yet under the power exercised by courts of equity in this state, as explained in Williams v. Pearson, supra, these contingencies do not invalidate the charitable bequest. The charity is the same, and under such power the equity court may carry out the wishes of the testator as nearly as circumstances will permit. This is not the exercise of the power of substituting one charity for another, which Justice Walker in Williams v. Pearson, supra, characterized as cy pres, a nonjudicial power, and not possessed by our equity courts at the time of testator's death.

It matters not what name be given to this power, whether it be termed an original or inherent power or that exercised under the doctrine of equitable approximation or deviation. The fact remains that it was possessed by the equity courts of this state at the time of the death of Governor Henderson.

I have carefully considered the opinion written on the first appeal in the light of the brief filed in support of the application for rehearing, and I am clear to the conclusion that under the applicable rules of construction, it was properly held that the beneficiary of the school trust was "the part of the public to be benefited," or, as I have indicated, the school children of Pike County, in whom the equitable estate vested immediately upon the demise of the settlor of the trust; that the rule against perpetuities was not violated and that a court of equity has power to see that the charitable intention of testator is carried out to the letter as nearly as circumstances will permit.

In Thurlow v. Berry, 247 Ala. 631, 635, 25 So.2d 726, 730, Mr. Justice Simpson, writing for the court, said: "* * * In construing a will to determine whether accumulation merely is provided, the court gives a constructional preference in favor of a finding that income is 'undisposed of' rather than to be 'accumulated'; in favor of 'finding that retention of income is in the course of judicious management of the trust, rather than an accumulation.' * * *"

Relative to the contention made by counsel for appellants that the so-called school trust violates the statute which places a restriction on trusts for accumulation only, § 146, Title 47, Code 1940, I am of the opinion that under the prevailing rule of construction, it was properly held in the opinion written on the first appeal that there was no violation of the statute. I am in agreement with what was said in that connection on the first appeal and do not feel impelled to elaborate thereon.

I feel that the cases cited by Justice Foster in the opinion which he prepared on the original submission of this appeal fully support the conclusion reached therein that said trust provisions do not violate the rule against accumulations as it existed at common law.

Counsel for appellants contend that, irrespective of my views on the merits, if I act consistently with views heretofore expressed, I must agree to a reversal of the decree appealed from on the ground that the trial court erred in construing the will on demurrer. It is true that in the past I have taken the position that a will should not be so construed. But my views on that point have not prevailed and do not constitute the prevailing rule.

I realize that I have not in this response to the application for rehearing considered in detail each and every point discussed in brief in support of the application. However, I have devoted considerable time and effort to a careful and studied consideration of all questions presented, and I am constrained to the conclusion that in spite of what may be the law in some other states and as expressed by eminent text writers, the conclusions which the majority of the court have heretofore reached in this case are in accord with the law of this state. I am, therefore, of the opinion that the application for rehearing should be overruled. As above indicated, I acquiesce in the modification of the judgment as to the taxation of costs.

LIVINGSTON, C. J., and FOSTER and STAKELY, JJ., concur.

FOSTER and STAKELY, JJ., concur for the reason that, in their opinion, there is no material conflict there expressed with either the opinion prepared by Justice STAKELY on the former appeal or with that prepared by Justice FOSTER on this appeal.

BROWN, J., further expresses the reasons on which his dissent is based.

BROWN, Justice (dissenting).

The fallacy of the statement in the opinion in Henderson v. Troy Bank & Trust Co., 250 Ala. 456, 34 So.2d 835, 843, that the equitable interest in the school trust vested on January 7, 1937, at testator's death "in the part of the public to be benefitted" (meaning children of school age born in Pike County), is exposed by the self evident undisputed fact that such children were not in esse, were unbegotten and would not come into being for more than a generation after testator's death. This purported gift is undisputedly a future interest, postponed for twenty years or more by contingencies set up in the will, as pointed out heretofore in my opinion, which might not be met during the twenty-one years permitted by the established rule against perpetuities. It is not only possible but probable that a gap between the death of the life beneficiaries will occur and other contingencies may not be met within the time prescribed by the rule. Said equitable interest designed by the testator for the benefit of children of school age coming into esse during future generations, is a "springing use" and cannot vest, if ever, until all of the contingencies set up in the will have been met and such contingencies must be certain to occur within the time fixed by the rule. The immediate gift of the entire corpus to the support of the trusts set up for the named individual legatees necessarily postponed any gift for charitable uses. In re Pott's Will, 205 App.Div. 147, 199 N.Y.S. 880; Holmes v. Welch, 314 Mass. 106, 49 N.E.2d 461, 157 A.L.R. 896.

In the face of the uniform decisions of this court repudiating the cy pres doctrine through the past century, said doctrine cannot with honesty or justice be applied to save a bad situation nor is the court authorized to apply that doctrine in the absence of previous legislation enacting the same to save the educational trust.

The doctrine of approximation, as I have heretofore pointed out in the foregoing opinion, is not applicable and rests upon principles other than the doctrine of cy pres. Thurlow v. Berry, 249 Ala. 597, 32 So.2d 526; Id., (on first appeal), 247 Ala. 631, 25 So.2d 726. To apply the doctrine of cy pres long since repudiated in Alabama and nonexistent at the time of the testator's death is nothing short of judicial legislation, which deprives the heirs at law of said testator of their rights without due process of law. Thurlow v. Berry, supra.

The complainants, as heirs at law, were within their rights in filing the bill to test the validity of the will and if valid have it construed. I am, therefore, of opinion that the court costs should be taxed against the trustee, as was done in the Thurlow case, supra.